### JAMES ROSA *v.* COLONIAL BANK
### (13196)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued March 9—decision released May 17, 1988

*Dominic J. Caciopoli,* for the appellant (defendant).
*William F. Gallagher,* for the appellee (plaintiff).

SHEA, J. In this action the plaintiff, James Rosa, claims that the defendant, Colonial Bank (Colonial), wrongfully seized the funds he had deposited in a special account with the bank and applied them to payment of a note that he and others had executed as co-makers. The note had been made payable and delivered to the Bank of Trumbull (Trumbull) and, after its maturity, was acquired by Colonial in a merger with Trumbull. A state trial referee, *Hon. James P. Doherty,* acting as the trial court, held that Colonial was not a holder in due course of the instrument and that the note, therefore, was "subject to such defenses as existed against it while in the hands of the Trumbull Bank." Concluding that, because Colonial had acquired the note while a suit upon it was pending in which various defenses had been raised, the note did not evidence the kind of debt against which a bank's right of setoff could be exercised, the court rendered judgment for the plaintiff to recover the amount of his deposit, $83,631.76 with interest.

Colonial has appealed from the judgment of the trial court, claiming error in the determination that it was not a holder in due course of the note. It also contends

that, in any event, it had the same rights as Trumbull on the instrument and has properly set off the debt to Trumbull against the plaintiff's funds in its possession pursuant to a provision of the note as well as its common law right of setoff.

In addition to those relied upon by the trial court, the plaintiff presents two alternative grounds upon which to affirm the judgment. First, he claims that Colonial's application of his individual special account funds to the joint and several debt of himself and four other co-makers of the promissory note was improper because there was no mutuality of debt between him and Colonial. Second, he claims that Colonial cannot set off a joint and several liability against his individual special purpose funds. We conclude that Colonial had the right to set off these funds against the note. Accordingly, we find error and remand the case to the trial court with direction to render judgment in favor of the defendant.

The trial court could reasonably have found the following facts: On September 6, 1980, the plaintiff together with James Englis, Arlen Nickowitz, James Iulo and George Jaser executed a note to Trumbull in the amount of $60,665.73. The note was due and payable on October 21, 1980. The plaintiff has conceded that the note was in default beginning on October 22, 1980. Trumbull initiated an action on January 9, 1981, for the collection of this note, and named the five makers, including the plaintiff, as defendants. On April 15, 1981, the defendants in that suit, including the plaintiff in this appeal, raised four special defenses, which alleged that Trumbull had charged excessive interest in violation of state and federal law. The defendants also counterclaimed to recover any excessive interest paid by them to that bank. On May 1, 1981, while the suit was pending, Trumbull merged with Colonial. The resulting corporation was Colonial.

On September 17, 1981, the plaintiff opened a deposit account at Colonial known as a "Money Market Now Account." This deposit account had a special feature. A depositor could sign a repurchase agreement with Colonial, which would then transfer a specified amount of money from the deposit account into certain securities for a fixed number of days. The deposit agreement provided that, when the repurchase agreement matured, Colonial would place all funds directly into the deposit account. On October 14, 1981, the plaintiff authorized a transfer of the funds pursuant to a repurchase agreement in the amount of $75,000 for a term of thirty days. Under the repurchase agreement the plaintiff had the right to withdraw his repurchase agreement funds with one day's notice.

On October 21, 1981, the plaintiff sought to withdraw the $75,000 in the repurchase agreement. John Festa, manager of Colonial's Hamden branch office, notified the plaintiff, however, that no money could be withdrawn from the repurchase agreement funds because the bank had placed a "hold" on these funds because of the dispute over the note to Trumbull that Colonial had acquired in the merger. Prior to November 13, 1981, when the repurchase agreement matured, Colonial told the plaintiff that he was obligated to it on the note originally signed with Trumbull, and that Colonial intended to set off this obligation against the $75,000 in the repurchase agreement.

When the repurchase agreement expired on November 13, 1981, Colonial transferred the $75,000 into the plaintiff's deposit account, but placed a hold on that account so he could not withdraw these funds. Although a hold remained on his deposit account, the plaintiff signed authorization cards on April 29, 1982, and on August 9, 1982, both of which "extend[ed] the terms of [his] Money-Market Now Investment Agreement and [gave] Colonial Bank authority to invest in securities

for an additional period of eighty-nine days . . . ." The second of these repurchase agreements expired on December 3, 1982, and Colonial transferred the $75,000 plus interest back into the plaintiff's deposit account. On December 6, 1982, there was a total of $83,631.76 in the deposit account. On that date Colonial set off $76,192.23 from the deposit account to pay the note, including accumulated interest, an additional $4500 to pay its attorney's fees incurred in collection proceedings on the note, and disbursed the remaining $2939.53 to the plaintiff. Subsequently, on December 10, 1982, the action brought by Trumbull to collect on the note was dismissed because that bank had failed to prosecute that action with reasonable diligence.

I

The defendant claims that the trial court erred in determining that Colonial was not a holder in due course of the note because it had notice of defenses, and had failed to prove that it took the instrument "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." General Statutes § 42a-3-302.[1] The defendant contends that the plaintiff never presented proper evidence of any defenses during the trial, but instead relied upon unproven allegations contained in the pleadings of another case. We need not decide whether these pleadings alone would constitute suffi-

---

[1] "[General Statutes] Sec. 42a-3-302. HOLDER IN DUE COURSE. (1) A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

"(2) A payee may be a holder in due course.

"(3) A holder does not become a holder in due course of an instrument (a) by purchase of it at judicial sale or by taking it under legal process; or (b) by acquiring it in taking over an estate; or (c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

"(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased."

cient notice that the note was "overdue or [had] been dishonored or of any defense against . . . it" so as to deprive Colonial of the status of a holder in due course, who would have taken the instrument free from the defenses that were raised against Trumbull. See General Statutes §§ 42a-3-302 and 42a-3-305;[2] *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, 187 Conn. 637, 640, 447 A.2d 1163 (1982). In any event, we agree with the conclusion of the trial court that Colonial was not a holder in due course because it took the note as part of a bulk transaction not in the regular course of business when it merged with Trumbull.

General Statutes § 42a-3-302 (3) (c) provides that "[a] holder does not become a holder in due course of an instrument . . . by purchasing it as part of a bulk transaction not in [the] regular course of business of the transferor." Comment 3 of the Uniform Commercial Code provides: "Subsection (3) is intended to state existing case law. It covers a few situations in which the purchaser takes the instrument under unusual circumstances which indicate that he is merely a successor in interest to the prior holder and can acquire no better rights. (If such prior holder was himself a holder in due course, the purchaser succeeds to that status under Section 3-201 on Transfer.) The provision applies to a purchaser at an execution sale, a sale in bankruptcy or a sale by a state bank commissioner of the assets

---

[2] "[General Statutes] Sec. 42a-3-305. RIGHTS OF A HOLDER IN DUE COURSE. To the extent that a holder is a holder in due course he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt except (a) infancy, to the extent that it is a defense to a simple contract; and (b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and (d) discharge in insolvency proceedings; and (e) any other discharge of which the holder has notice when he takes the instrument."

of an insolvent bank. It applies equally to an attaching creditor or any other person who acquires the instrument by legal process, even under an antecedent claim; and equally to a representative, such as an executor, administrator, receiver or assignee for the benefit of creditors, who takes over the instrument as part of an estate, even though he is representing antecedent creditors. Subsection (3) (c) applies to bulk purchases lying outside of the ordinary course of business of the seller. It applies, for example, when a new partnership takes over for value all of the assets of an old one after a new member has entered the firm, or to a reorganized or *consolidated* corporation taking over in bulk the assets of a predecessor. It has particular application to the purchase by one bank of a substantial part of the paper held by another bank which is threatened with insolvency and seeking to liquidate its assets." (Emphasis added.) Uniform Commercial Code § 3-302, comment 3, 2 U.L.A. 177 (1977).

Several cases have held that a bank does not become a holder in due course when it purchases a substantial part of the paper held by another bank, which is threatened with insolvency and is seeking to liquidate its assets. *Federal Deposit Ins. Corporation* v. *Galloway,* 613 F. Sup. 1392, 1397 (D. Kan. 1985); *P P Inc.* v. *McGuire,* 509 F. Sup. 1079, 1084 (D.N.J. 1981); *First Alabama Bank of Guntersville* v. *Hunt,* 402 So. 2d 992, 994 (Ala. Civ. App. 1981), cert. denied, 402 So. 2d 995 (Ala. 1981); *Henkin, Inc.* v. *Berea Bank & Trust Co.,* 566 S.W.2d 420, 424 (Ky. App. 1978). Whether the merger of two banks constitutes a bulk transaction under § 42a-3-302 (3) (c) is apparently an issue of first impression. Our statutes pertaining to corporate mergers provide, on the one hand, that all the assets of the merging corporations, including "all debts due on whatever account, and all other choses in action," become vested in the surviving corporation; General Statutes

§ 33-369 (c);[3] and, on the other hand, that the surviving corporation "shall . . . be responsible and liable for all the liabilities . . . of each of the merging or consolidating corporations," so that "any claim existing . . . against any such corporation may be prosecuted as if such merger . . . had not taken place." General Statutes § 33-369 (e).[4] To give a surviving corporation that has acquired a note in a merger greater rights upon the instrument than were possessed by a constituent merging corporation prior to the merger would be contrary to the intention of these statutes, which seek to preserve rights existing before the merger but not to enhance them by virtue of the merger. We conclude that there is not a significant difference between a bank acquiring most of the assets of another bank, which is threatened with bankruptcy, and a bank acquiring all of the assets of another bank through a merger. Colonial is clearly the successor in interest to Trumbull, and can

---

[3] General Statutes § 33-369 (c) provides: "The surviving or new corporation shall thereupon and thereafter, to the extent consistent with its certificate of incorporation as in effect upon effecting the merger or consolidation, possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation."

[4] General Statutes § 33-369 (e) provides: "The surviving or new corporation shall thenceforth be responsible and liable for all the liabilities, obli-. gations and penalties, including liability to dissenting·shareholders, of each of the merging or consolidating corporations; and any claim existing or action or proceeding, civil or criminal, pending by or against any such corporation may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place; and any judgment rendered against any of the merging or consolidating corporations may be enforced against the surviving or new corporation. Neither the rights of creditors nor any liens upon the property of any merging or consolidating corporation shall be impaired by the merger or consolidation."

possess no greater rights upon the note. Accordingly, we hold that the trial court did not err in concluding that Colonial is not a holder in due course because it acquired the note "as part of a bulk transaction not in [the] regular course of business of the transferor." General Statutes § 42a-3-302 (3) (c).

## II

While Colonial is not a holder in due course of the note, it is still a holder of the note pursuant to General Statutes § 42a-3-306.[5] When a holder is not a holder in due course, a maker can under § 42a-3-306 (b) raise "all defenses of any party which would be available in an action on a simple contract." During the trial of the case at bar the plaintiff introduced into evidence as an exhibit the answer he and four other co-makers of the note had submitted when Trumbull had brought suit against them. This answer contained four special defenses and a counterclaim that alleged that Trumbull had charged excessive interest on the note in violation of federal and state law. The plaintiff in his complaint in the present case did raise the issue that Colonial had "converted" his deposit account to its own use, but it is undisputed that he submitted no evidence of any defenses during the trial except for the allegations contained in the answer filed in the suit initiated by Trumbull. Allegations in pleadings do not constitute

---

[5] "[General Statutes] Sec. 42a-3-306. RIGHTS OF ONE NOT HOLDER IN DUE COURSE. Unless he has the rights of a holder in due course any person takes the instrument subject to (a) all valid claims to it on the part of any person; and (b) all defenses of any party which would be available in an action on a simple contract; and (c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose; and (d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party."

evidence, except that statements contained in withdrawn or superseded pleadings may be admissible as evidential admissions by the party who made them, an exception that is not applicable in this case. *Dreier* v. *Upjohn,* 196 Conn. 242, 244–50, 492 A.2d 164 (1985). Since the plaintiff presented no testimony during the trial in support of the allegations of the special defenses, there is no basis for assuming that such defenses in any manner diminished whatever right of setoff Colonial possessed.

The note to Trumbull provides: "If an event of default occurs, we have the right to pay this loan with any assets or funds of yours in our possession. This includes funds in any checking, savings or other deposit accounts. We may do this without demand or notice to you." By virtue of the merger, Colonial acquired the right of setoff expressly given in this note to Trumbull and could, in accordance with this provision, apply in satisfaction of the debt, any unrestricted funds in its possession belonging to an obligor on the note, such as the plaintiff.

### III

### A

The plaintiff claims that the judgment may be affirmed upon the alternative ground that Colonial's application of his individual special account funds to the joint and several debt of the plaintiff and four other co-makers was improper because there was no mutuality of debt between him and Colonial. He contends that a bank may not set off the deposit of an individual against the joint and several obligation of that individual and others unless the individual is the lone principal and the others are sureties. *Teeters* v. *City National Bank,* 214 Ind. 498, 14 N.E.2d 1004 (1938).

Courts in a number of jurisdictions, however, have held that a bank may set off an individual deposit of

one of several debtors against a joint debt. *Valley Bank & Trust Co.* v. *Roy*, 6 U.C.C. Rep. 828, 829 (Mass. App. 1969); *Rush* v. *Citizens National Bank*, 114 Ark. 170, 173–75, 169 S.W. 777 (1914); *Adcock* v. *First National Bank of Atlanta*, 144 Ga. App. 394, 395, 241 S.E.2d 289 (1977); *Merchants National Bank* v. *Maple*, 65 Ill. App. 484, 487–88 (1895); *Miles* v. *Bank of Commerce*, 76 Misc. 2d 623, 624–25, 351 N.Y.S.2d 513 (Civ. Ct. 1973); *Sears* v. *Continental Bank & Trust Co.*, 553 S.W.2d 394 (Tex. Civ. App), rev'd on other grounds, 562 S.W.2d 843 (Tex. 1977). "The better rule would appear to be that if the bank could proceed directly against the depositor alone in a suit on the debt, or could obtain satisfaction of a judgment against the joint debtors from the depositor alone, then the bank should be permitted the self-help remedy of setoff. Such a rule should in no way affect the right of contribution or indemnity or any other relationship among the joint debtors." J. TeSelle, "Banker's Right of Setoff–Banker Beware," 34 Okla. L. Rev. 40, 53 (1981).

"Unless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or endorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as 'I promise to pay.' " General Statutes § 42a-3-118 (e). It is undisputed that the plaintiff is a co-maker of the note, and is jointly and severally liable for this obligation. Colonial was entitled to sue any of the co-makers for the entire obligation because they were jointly and severally liable. See *Marko* v. *Stop & Shop, Inc.*, 169 Conn. 550, 557, 364 A.2d 217 (1975). General Statutes § 52-139 (a) provides that "[i]n any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other." We hold that a bank may set off an individual deposit of one of several debtors against the joint debt.

## B

The plaintiff also claims that the judgment may be affirmed on the ground that Colonial could not set off a joint and several liability against his individual special purpose funds. "[F]unds deposited in a bank for [a] special purpose known to the bank or under special agreement cannot be setoff by the bank against a debt due it from the depositor." *Vic Gerard Golf Cars* v. *Citizens National Bank,* 528 F. Sup. 237, 241 (D. Conn. 1981). He contends that the repurchase agreement account was a special purpose account separate from the deposit account and, therefore, argues that Colonial could not set off any funds placed in a repurchase agreement. He acknowledges that the formal setoff occurred on November 6, 1982, while these funds were in the deposit account, but he maintains that a de facto setoff occurred when Colonial placed a hold on the funds in the repurchase agreement on October 21, 1981.

"A special purpose account [however,] is generally one over which the depositor has only limited dominion and control. The deposit is usually made with special restrictions or limitations agreed upon between the bank and depositor. Accounts specially designated for the depositor's accounting purposes, such as separate 'Payroll Account,' or deposits the depositor plans to use for a special purpose will not be considered special accounts for the purposes of setoff, even if the bank knows of the intended special use, if the depositor retains unlimited dominion over the account." J. TeSelle, supra, 46; accord *In re Goodson Steel Corporation,* 488 F.2d 776 (5th Cir. 1974); *Ribaudo* v. *Citizens National Bank,* 261 F.2d 929 (5th Cir. 1958); *United States* v. *Tri-County Bank,* 415 F. Sup. 858 (D.S.D. 1976). Common examples of special purpose accounts include payroll accounts in which the bank agrees to honor only certain checks payable to the depositor's employees;

*In re Goodson Steel Corporation,* supra; and trust or escrow accounts in which the bank has notice of third parties' interests in the account. *First National Bank & Trust Co.* v. *Osage Supply Co.,* 186 Okla. 259, 260–61, 97 P.2d 3 (1939).

One court has held that a bank may set off funds in a repurchase agreement account where the depositor has failed to demonstrate that the account served a special purpose. *Smith* v. *Mark Twain National Bank,* 57 B.R. 373, 374–78 (E.D. Mo.), aff'd in part, rev'd on other grounds, 805 F.2d 278, 284–86 (8th Cir. 1986). The plaintiff has not claimed that any other person had an interest in the funds, whether they were in the repurchase agreement account or in the deposit account. The only "special purpose" served by the repurchase agreement account that is disclosed by the evidence was to provide the plaintiff with a greater rate of interest on his deposit. We conclude that the funds in the plaintiff's repurchase agreement were intended only for his benefit, and did not serve any special purpose that would differentiate them from an ordinary deposit in this respect. We hold that the defendant had the right to set off funds in either the repurchase agreement or deposit account.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment in favor of the defendant.

In this opinion the other justices concurred.