KAREN L. GEMME *v.* MORTON H. GOLDBERG ET AL.
(11334)
(11335)

DUPONT, C. J., DALY and HEIMAN, Js.

Argued March 29—decision released June 1, 1993

*Philip Vernon Chabot,* for the appellant (named defendant).

*Karen P. Blado,* with whom were *Medina K. Jett* and, on the brief, *Jan C. Trendowski* and *Frank J. Mastrandrea,* for the appellant (defendant Herbert G. Schreiber).

*R. Bartley Halloran,* for the appellee (plaintiff).

HEIMAN, J. The defendants each appeal from a judgment rendered on a verdict against the defendant Herbert G. Schreiber awarding the plaintiff $50,000 and against the defendant Morton H. Goldberg awarding the plaintiff $200,000, reduced by 25 percent on account of the plaintiff's own negligence, for a net verdict against Goldberg of $150,000. The action is claimed to have had its genesis in the failure of both defendants to obtain the plaintiff's informed consent to treatments rendered to her by each of them individually.

The defendant Schreiber claims that the trial court improperly (1) permitted the plaintiff to amend her complaint to add a new claim against him during trial, (2) denied his request to amend his answer and special defense based on the new claim raised by the plaintiff in her amended complaint, (3) found that there was sufficient evidence produced demonstrating that (a) feasible alternative forms of treatment existed, (b) Schreiber had a duty to advise the plaintiff of their existence, (c) he breached that duty, and (d) his breach of that duty was the proximate cause of the plaintiff's injuries, (4) permitted the plaintiff to ask questions implicating the standard of care as to Schreiber, (5) instructed the jury in its supplemental charge regarding the necessity of expert testimony for a verdict against Schreiber, and (6) denied his motions for summary judgment, for a directed verdict, to set aside the verdict or for judgment notwithstanding the verdict. We need discuss only claims (3) and (4).

The defendant Goldberg claims that the trial court incorrectly (1) denied his request to mark the original and amended complaints as full exhibits, (2) denied his motion for directed verdict when there was a failure by the plaintiff to produce evidence of the standard of practice of obtaining informed consent or that he had breached the standard, (3) denied his motion for a directed verdict when the plaintiff failed to establish by expert testimony the existence of a causal relationship between the aspect of surgery about which no alternative was allegedly discussed and the subsequent outcome of treatment, and (4) responded to a question from the jury concerning the need for expert testimony.

We reverse the judgment of the trial court insofar as it relates to Schreiber and affirm the judgment against Goldberg.

The jury could reasonably have found the following facts. In November, 1983, the plaintiff consulted the defendant, Schreiber, an orthodontist, because of the protrusion of her front teeth. She hoped to correct her overbite. Schreiber had previously treated the plaintiff's sister's teeth orthodontically. Prior to her consultation with Schreiber, the plaintiff had experienced no dental problems that required treatment other than treatment by her family dentist for cavities. She had not undergone any periodontal care, root canal therapy or teeth extractions.

On her first visit with Schreiber, the plaintiff had X rays taken and a mold of her mouth made. On the basis of her consultation with Schreiber, the plaintiff understood that her problem could be corrected orthodontically with the application of braces and that the treatment would require that she wear braces for approximately two years. Schreiber did not discuss oral surgery with the plaintiff on her first visit. The plaintiff knew that her sister had not required any oral surgery while she was treated by Schreiber.

In January, 1984, at the advice of Schreiber, the plaintiff had her first upper two bicuspids extracted. After a healing period, Schreiber applied braces to her teeth. After the teeth were extracted, Schreiber for the first time indicated to the plaintiff that surgery might be required. He advised her that because her jaw was out of alignment, he might not be able to correct her overbite by the application of braces alone. He explained that, if such surgery were needed, it would require that her jaws be broken and then wired shut for a period of six to eight weeks.

In November, 1984, Schreiber concluded that surgery was necessary in order to close the space created by the extractions and to correct the overbite. He discussed no alternative treatment plan with the plain-

tiff, but told her merely that she required surgery. He also explained in general terms that there is always a risk that surgery would not go well and that you would not get the result wanted. Schreiber did not, however, explain with specificity other problems that might arise. He normally leaves that explanation to the surgeon since it is not in Schreiber's field of expertise to be specific as to those problems. He referred her for a surgical consultation with the defendant Goldberg.

The plaintiff consulted with Goldberg on November 28, 1984. Goldberg noted that her deformity was obvious to him and that two teeth had been extracted. He advised her that he could not give her a definitive treatment plan until he had studied her plaster models and X rays. On that same day, he called Schreiber and his office note indicated that he discussed with Schreiber that he was thinking in terms of treatment options that included maxillary surgery, closing off the spaces surgically, and the need to push the mandible. His notes did not reflect that he discussed with the plaintiff nonsurgical options at the time of the first consultation although his practice would have been to talk with the patient as he examined her and tell her that the fact that the two teeth had been extracted opened up some options as to how to proceed.

Goldberg next saw the plaintiff on January 23, 1985. At that time, he showed the plaintiff the molds of her teeth. He displayed the molds and used them to demonstrate where her jaw would be moved back, that the upper and lower jaws would be broken, that the two spaces where the teeth had been extracted would be cut and brought together and pulled in. He also explained that her jaws would be wired shut for six to eight weeks. When discussing the risks attendant upon the surgery, he stated that he had done hundreds of these operations and that the worst things that had happened were that one person required a postoperative

root canal and that another had lost a tooth. Goldberg did not discuss with the plaintiff any alternate methods of closing the spaces. On the basis of her discussion with Goldberg, Gemme consented to undergo the surgical treatment outlined by Goldberg.

The plaintiff was admitted to Hartford Hospital on January 31, 1985. On the following day, Goldberg performed surgery, a LeFort I three part maxillae with impaction and closure of the bicuspid spaces and a bilateral sagittal split of the mandible, on the plaintiff.

The plaintiff was discharged from the hospital on February 4, 1985, to be seen in follow-up care in Goldberg's office on February 6. The discharge summary from the hospital indicated that she had no fever, the swelling of her face had decreased, she was still experiencing moderate discomfort and the operative areas were clean and dry.

On February 6, 1985, the plaintiff was seen in Goldberg's office. On that date, she still had very ecchymotic cheeks and gingiva with moderate discomfort. There was also a question concerning the condition of the upper right second bicuspid root. She was given a prescription for demerol liquid and instructed to return in a week. The ecchymosis (black and blue) noted was in both the upper and lower gums, cheeks, chin and upper neck.

The plaintiff returned to see Goldberg on February 13, 1985. On that visit, he noted that the gum that would ordinarily cover the anterior segment was gone. The bone was also exposed indicative of a postoperative complication of a compromise of the blood supply to that portion of the bone.

Goldberg continued to treat the plaintiff until April 23, 1987, when she terminated the relationship.

The last time that Goldberg examined the plaintiff was on December 11, 1986. At that time, he noted horizontal bone loss in the front portion of the jaw.

Subsequently, the plaintiff was required to have a number of her upper teeth subjected to root canal process and ultimately extracted. She also required additional treatment of her gums and surgery.[1]

## I

### THE DEFENDANT SCHREIBER'S CLAIMS
### (11335)

Schreiber asserts that the plaintiff was precluded from offering expert testimony against him by reason of the trial court's granting of his motion in limine invoking the provisions of Practice Book § 220 (D). We agree. Without such testimony, there was insufficient evidence to hold the defendant Schreiber liable for any harm to the plaintiff. We hold that the plaintiff was precluded from offering any expert testimony as to the standard of care, causation, and the duty owed as to the treatment by Schreiber. The testimony of Schreiber and Goldberg on these subjects was expert testimony that was precluded by the motion in limine. Consequently, the plaintiff did not sustain her burden of proof against the defendant Schreiber and he was entitled to a directed verdict.

An understanding of the following additional facts is necessary for a resolution of this claim. On February 14, 1992, counsel for Schreiber presented a motion in limine seeking to preclude the plaintiff from presenting the testimony of any expert witnesses as to issues relating to the standard of care, causation, or duty as to the treatment rendered by Schreiber to the plain-

---

[1] Additional facts will be set forth where they are relevant to the issue raised.

tiff, pursuant to Practice Book § 220 (D).[2] While the trial court did not expressly grant the motion,[3] the parties have argued the cause as if it had been properly granted and we shall treat it in the same manner. The plaintiff then called Schreiber and Goldberg to testify.

In her brief, the plaintiff effectively concedes that she was precluded from offering expert testimony as against Schreiber. She responds, however, that Schreiber forgets that he himself was an expert as was Goldberg and that they supplied the necessary expert testimony. In this instance, however, we are persuaded that the order precluded the defendant from offering *any* expert testimony against Schreiber, including his own and that of his codefendant Goldberg.

Practice Book § 220 (A) provides in pertinent part that "[a] party may through interrogatories require any other party to identify each person whom the other

---

[2] Practice Book § 220 (D) provides in pertinent part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

[3] The transcript of the proceedings reflects the following concerning the motion in limine. After counsel for Schreiber discussed the parameters of his motion, counsel for Gemme stated:

"[Plaintiff's Counsel]: Your Honor, I have represented to counsel that I will not bring in an expert to testify on any of those specific fields [standard of care, causation, or duty as far as the treatment rendered by Schreiber].

"The Court: Let the record so show."

After a representation that the actual motion was broader in scope than the statement of counsel the following occurred:

"The Court: We will go on the basis of the articulation on the record as noting the limits of it."

The trial court file discloses no notation on the motion indicating that it had been granted.

party expects to call as an expert witness at trial . . . ." The trial court has discretion to impose sanctions on parties who fail to answer interrogatories requesting disclosure of any expert witness the parties intend to call. Practice Book § 231. The sanctions imposed may include exclusion of any expert testimony at trial. Practice Book § 231 (d); *Separack* v. *Solaz,* 17 Conn. App. 684, 693, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989); *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 518, 509 A.2d 552 (1986).

In claiming that the expert testimony relied on was properly admitted in the face of the order precluding expert testimony, the plaintiff attempts to distinguish between an independently retained expert and treating physicians. She thus claims that the order excluding expert testimony would not apply to Schreiber's testimony. We are unpersuaded.

"The term expert may be extended to all persons acquainted with the science or practice in question. . . . Practice Book § 220 (A) (1) employs the term expert witness and does not draw a distinction between treating and independent experts. . . . Thus, pursuant to Practice Book § 220, a trial court may exclude expert testimony proffered by a party regardless of any agency relationship that may exist between the expert witness and the opposing party." (Citations omitted; internal quotation marks omitted.) *Yale University School of Medicine* v. *McCarthy,* 26 Conn. App. 497, 500, 602 A.2d 1040 (1992). We have previously held and continue to hold that the disclosure requirements of Practice Book § 220 (D) apply with equal force to treating physicians as well as to independent experts. *Bank of Boston Connecticut* v. *Ciarleglio,* 26 Conn. App. 503, 509, 604 A.2d 359, cert. denied, 221 Conn. 922, 608 A.2d 685 (1992).

Thus, the trial court, having precluded the introduction of any expert testimony against Schreiber, should not have permitted Schreiber's or Golberg's testimony to be used as expert testimony. Informed consent actions require that the plaintiff prove both the duty and the breach of that duty through expert testimony. *Mason* v. *Walsh*, 26 Conn. App. 225, 229–30, 600 A.2d 326 (1991), cert. denied, 221 Conn. 909, 602 A.2d 9 (1992). On the basis of the lack of expert testimony to prove both the duty and the breach of that duty, the trial court should have granted Schreiber's motion for directed verdict. See id., 230.

Since our resolution of this issue is dispositive of Schreiber's appeal, we need not consider his other claims.

## II

### THE DEFENDANT GOLDBERG'S CLAIMS (11334)

### A

The defendant Goldberg first asserts that the trial court improperly rejected his request that it take judicial notice of the original and amended complaints or that he be permitted to mark them as full exhibits. We do not agree.

Certain additional facts must be set forth for a clear understanding of this issue and its resolution. When Goldberg's counsel concluded the examination of his last witness, he indicated to the judge that there was a "housekeeping matter before I rest." The jury was excused and counsel for Goldberg asked the trial court to take judicial notice of the original complaint and the amended complaint.[4] After a discussion with the par-

---

[4] The request by the defendant Goldberg was as follows: "[Defendant Goldberg's Counsel]: Your Honor, the housekeeping matter to which I made reference was my request that the court take judicial notice of the plead-

ties, the trial court declined to take judicial notice as requested. Goldberg's counsel duly excepted.

Counsel next asked that the original complaint and the amended complaint be marked as full exhibits. The trial court denied the motion observing that the documents should properly have been presented to the plaintiff and that she could have been questioned about them. In that way, the jury could assess her credibility if it found that the pleadings were inconsistent or injected new matters. The court further observed that introducing the documents into evidence without a proper foundation would deprive the plaintiff of an opportunity to explain any alleged inconsistencies. Goldberg excepted to the ruling. Goldberg then rested his case out of the presence of the jury with the understanding that if the trial court permitted the documents to be admitted as full exhibits that they would be appropriately marked. The defendant made no attempt to call the plaintiff as a witness and to introduce the original complaint into evidence through her testimony.

Whether to take judicial notice of a fact is a function of the exercise of judicial discretion. *West Hartford* v. *Freedom of Information Commission,* 218 Conn. 256, 264, 588 A.2d 1368 (1991); *De Luca* v. *Park Commissioners,* 94 Conn. 7, 10, 107 A. 611 (1919); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 6.1.3, p. 119; 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 22. Where a ruling involves the exercise of the trial court's discretion, its action will not be disturbed unless it has abused that broad discre-

---

ings. Specifically, the original complaint in this case. And then the amended complaint, which was filed during the course of this trial. My request has been, simply, that the court advise the jury in neutral terms, simply, that the claim of the alleged failure of the defendant, Morton Goldberg, to advise the plaintiff of viable alternatives, was not a claim being made in this case until the trial of this case commenced. And I would renew that request at this time."

tion. *Pool* v. *Bell,* 209 Conn. 536, 541, 551 A.2d 1254 (1989). In determining whether the trial court has abused its broad discretion, we will afford every reasonable presumption in favor of the correctness of its ruling. *State* v. *Leonard,* 31 Conn. App. 178, 190, 623 A.2d 1052 (1993); *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 108, 476 A.2d 1074 (1984). The ultimate issue to be determined in a claim involving an alleged abuse of the trial court's discretion is whether the trial court could reasonably conclude as it did. *Walton* v. *New Hartford,* 223 Conn. 155, 171, 612 A.2d 1153 (1992); *DiPalma* v. *Wiesen,* 163 Conn. 293, 298–99, 303 A.2d 709 (1972); *State* v. *Leonard,* supra.

Our review of the record convinces us that the trial court did not abuse its considerable discretion in declining to take judicial notice of the original complaint. The trial judge correctly pointed out to counsel that the same result that counsel sought could have been achieved in a way that would not have been a potential source of prejudice to the plaintiff and her cause. The trial court could reasonably have concluded as it did. See *Walton* v. *New Hartford,* supra; *DiPalma* v. *Wiesen,* supra. The claim that the trial court improperly declined to take judicial notice is thus without merit.

The trial court also properly declined to mark either the original complaint or the amended complaint as full exhibits. The court noted that the proper evidentiary foundation for admission of these documents had not been established. The trial court suggested to counsel that if the plaintiff were on the witness stand he could question her as to her knowledge of the pleadings and use the pleadings, if appropriate, as a vehicle to mount an attack on her credibility. If that procedure were followed, the plaintiff then would have an opportunity to respond to them. If the documents were merely marked as exhibits and the contents argued to the jury, she

would have been denied the opportunity to respond to their use. Although he had not rested his case before the jury, Goldberg made no attempt to call the plaintiff to question her about inconsistencies in her pleadings or challenge her credibility. We conclude that the trial court was correct in its ruling.

Our standard of review of issues involving evidentiary rulings is that we will set aside on appeal rulings on evidentiary matters only upon a showing of a clear abuse of discretion. *Hall* v. *Burns,* 213 Conn. 446, 451, 569 A.2d 10 (1990); *Munson* v. *United Technologies Corporation,* 28 Conn. App. 184, 189, 609 A.2d 1066 (1992).

Statements in superseded pleadings may be admissible as evidentiary admissions. *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 248–49, 492 A.2d 164 (1985); *Chomko* v. *Patmon,* 19 Conn. App. 483, 486–87, 563 A.2d 311, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989); see also *Rosa* v. *Colonial Bank,* 207 Conn. 483, 492, 542 A.2d 1112 (1988). The opposing party, however, is entitled to an opportunity to explain the circumstances under which the statements were made and the party's knowledge as to the contents of the pleading so that the trier of fact may properly determine the weight to be given the statements in issue. *Dreier* v. *Upjohn Co.,* supra, 247 n.1; *Kucza* v. *Stone,* 155 Conn. 194, 197–98, 230 A.2d 559 (1967). The trial court correctly pointed out that fact to Goldberg's counsel who apparently decided not to attempt to introduce the exhibits through an appropriate witness. While our Supreme Court concluded in *Dreier* v. *Upjohn Co.,* supra, that the fact that the defendant was permitted to introduce the superseded complaint at the close of his case, rather than in the context of the plaintiff's testimony, represented a procedure less common than direct impeachment, it nonetheless did not constitute error to have so done. The court then stated: "Even in such

instances, however, the impeached party must be given an opportunity to explain the admissions in the superseded pleading." Id., 247 n.1.

We conclude that the defendant was not deprived of his right to make use of the claimed evidential admissions. He could have sought to introduce the exhibits through an appropriate witness. The trial court did not abuse its discretion in its evidentiary rulings by not permitting Goldberg to employ the "procedure less common than direct impeachment" utilized by the defendant in *Dreier* v. *Upjohn Co.,* supra.

### B

Goldberg next asserts that the trial court improperly denied his motion for directed verdict where the plaintiff had failed to produce expert testimony as to the standard of obtaining informed consent or his breach of that standard. We do not agree.

Goldberg posits that the plaintiff alleged two claims as to the issues on which he failed to obtain her informed consent: (1) that he failed to warn her adequately of the danger of loss of teeth caused by interruption of blood flow to the teeth as a result of the surgery; and (2) that he failed to advise her of feasible alternative treatments. Goldberg asserts that the burden was clearly on the plaintiff to establish by expert testimony the standard of medical practice regarding informed consent and the fact that the defendant breached that standard. See *Hammer* v. *Mount Sinai Hospital,* 25 Conn. App. 702, 710–11, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). We agree that this standard represents the plaintiff's burden.

Unlike the situation in the Schreiber case, the plaintiff was not precluded by a motion in limine from presenting expert testimony against Goldberg on the

issues of standard of care and its breach.[5] "The plaintiff may rely on the defendant's testimony to meet [her] burden of producing positive evidence of an expert nature from which the jury could reasonably and logically conclude that the defendant was negligent." *Williams* v. *Chameides,* 26 Conn. App. 818, 823, 603 A.2d 1211, cert. denied, 221 Conn. 923, 608 A.2d 689 (1992). Here, the plaintiff asserts that she properly relied on the testimony of the defendant Goldberg to provide the requisite expert testimony relating to the standard of care and its breach, and that from this testimony, the jury could have reasonably and logically concluded that Goldberg was negligent. *Snyder* v. *Pantaleo,* 143 Conn. 290, 294, 122 A.2d 21 (1956); *Williams* v. *Chameides,* supra. We agree.

Our courts have often held that "[t]he decision to set aside the verdict [or to direct a verdict] entails the exercise of a broad discretion that, in the absence of clear abuse, we shall not disturb. . . . In our review of the exercise of this discretion, we accord great weight to the trial court's decision . . . ." (Citations omitted; internal quotation marks omitted.) *Ginsberg* v. *Fusaro,* 225 Conn. 420, 425, 623 A.2d 1014 (1993); *Caciopoli* v. *Acampora,* 30 Conn. App. 327, 330, 620 A.2d 191 (1993). "Our review of the trial court's refusal to direct a verdict requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Citations omitted; internal quotation marks omitted.) *Hammer* v. *Mount Sinai Hospital,*

---

[5] While Goldberg did file a motion to preclude certain expert's testimony, his motion, unlike Schreiber's motion in limine, did not seek to preclude any or all expert testimony from being introduced.

supra, 717; *Caciopoli* v. *Acampora,* supra. Our review of the evidence leads us to conclude that the trial court acted properly in denying the motion that was based on a lack of expert testimony.

The plaintiff testified that at no time did Goldberg discuss with her any alternative treatment to the segmental surgery. Goldberg testified that he discussed with her a number of options and permutations of proposed treatment as he does with each patient he sees.[6] He also testified, however, that, while he was aware of a viable alternative to the segmental surgery that he performed, it would have required that the plaintiff be satisfied with a less than perfect result, and he did not discuss this alternative with the patient.

Our law does not require that the plaintiff wring out of the defendant or other expert witness a "specific expression of opinion that the conduct of the defendant was negligent or unskillful." (Internal quotation marks omitted.) *Snyder* v. *Pantaleo,* supra; *Williams* v. *Chameides,* supra. To demand "a positive condemnation of the operator's course as a prerequisite to recovery would, in such cases, be prohibitory of any recovery therein." *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153 (1927).

---

[6] Goldberg testified that although his records do not include a written note of what he told the plaintiff in his consultation with her on January 23, 1985, he fully discussed with the plaintiff, as he does with all patients, the various options available to her for treatment. He testified that he discussed with her as options whether she wanted to undergo surgery, whether she should have surgery on one jaw or two, whether the spaces created by prior extractions would be closed at the time of the upper jaw surgery or be left to be done six months later. He also stated that he had not discussed with the plaintiff the option of using bridgework to close the gap in the maxillary jaw rather than segmental surgery. He stated that this was a viable alternative for the plaintiff "if she was willing to accept a final situation where her maxilla was not completely corrected from its deformity." He also testified that the problems from which the plaintiff suffered were in the areas where the segmental surgery had been performed.

The jury could have reasonably and logically concluded on the basis of Goldberg's own expert testimony that the standard of care required that he discuss with the patient in detail all viable alternative methods of treatment, including all options and permutations of treatment available. The jury could also have reasonably and logically concluded that Goldberg breached that duty by failing to disclose a viable alternative that might have produced a less perfect result but may have represented a safer or less invasive procedure.

The trial court properly denied the defendant Goldberg's motion for directed verdict.

## C

Goldberg next asserts that the trial court improperly denied his motion for directed verdict grounded on the claim that the plaintiff had failed to produce expert testimony concerning a causal relationship between that portion of the surgery about which no alternative was discussed and the subsequent outcome of the treatment provided. We are unpersuaded.

Again, we review a claim involving a denial of a motion for directed verdict by viewing the evidence in the light most favorable to sustaining the verdict. *Caciopoli* v. *Acampora,* supra; *Hammer* v. *Mount Sinai Hospital,* supra. We will set aside the verdict and direct judgment only where the jury could not reasonably and legally have reached the conclusion that it did. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 130, 540 A.2d 666 (1988); *Hammer* v. *Mount Sinai Hospital,* supra. Applying this standard, we conclude that the trial court acted properly in denying the motion for a directed verdict.

Once the existence of a duty to inform has been established, the plaintiff must then prove the extent or degree of disclosure in accordance with the lay standard. *Lambert* v. *Stovell,* 205 Conn. 1, 5, 529 A.2d 710

(1987); *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 292–93, 465 A.2d 294 (1983); *Mason* v. *Walsh,* supra. The physician is thus charged with the duty to disclose to the patient that information that "a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy." *Logan* v. *Greenwich Hospital Assn.,* supra. In *Logan* v. *Greenwich Hospital Assn.,* supra, 294–95, our Supreme Court found error in an instruction by the trial court informing the jury in its charge that a surgical procedure more hazardous than that performed need not be disclosed to the patient because it was not a viable alternative. The court held that such a charge would effectively limit a physician's duty to inform his or her patients of alternatives. The court rejected the charge requiring that physicians advise their patients of only the least hazardous procedure even though there was evidence that viable alternatives existed. *Pedersen* v. *Vahidy,* 209 Conn. 510, 521–23, 552 A.2d 419 (1989); *Logan* v. *Greenwich Hospital Assn.,* supra.

Here, Goldberg was aware of a viable alternative, the drawback of which was an imperfect cosmetic result. On the basis of that drawback, he failed to disclose this alternative to the plaintiff. "The incongruity of making the medical profession the sole arbiter of what information was necessary for an informed decision to be made by a patient concerning [her] own physical well-being has led to various judicial and legislative attempts within the last [twenty years] to define a standard tailored to the needs of the patient but not unreasonably burdensome upon the physician or wholly dispensing with the notion that 'doctor knows best' in some situations." *Logan* v. *Greenwich Hospital Assn.,* supra, 290. On the basis of the evidence, the jury could reasonably have found that Goldberg resorted to the pre-*Logan* standard of "doctor knows best," thereby depriving the

plaintiff of her right to make an informed judgment about her treatment. We cannot say as a matter of law that a doctor is any more justified in withholding information from a patient on the ground that the result would have been less perfect than our Supreme Court could conclude as a matter of law that a more hazardous procedure need not be disclosed. Id.

Goldberg testified that the plaintiff suffered harm in the area of the segmental surgery. He also testified that if the closure were performed with bridgework that the segmental surgery would have been unnecessary.

On the basis of all of these considerations, we are satisfied that the jury could properly have found the existence of a causal relationship between the information that was withheld by the defendant Goldberg and the harm suffered by the plaintiff.

Our review of the entire record causes us to conclude that the trial court properly refused to direct a verdict on the basis of Goldberg's claim of lack of a causal relationship.

## D

Finally, Goldberg asserts that the trial court's supplemental instruction given in response to a jury question was fatally defective. We do not agree.

On the second day of deliberations, the jury sent to the trial court a question regarding expert testimony and the standard of care.[7] The trial court responded to the question.[8]

---

[7] The question addressed to the trial court by the jury was: "Does the law require that the plaintiff must establish by expert testimony a standard of care if a finding of negligence is sought? And please reread the charges against Dr. Schreiber."

[8] The trial court responded in pertinent part: "All right, now the law requires the plaintiff to establish, through expert testimony, that doctors in the line of practice as those of the two defendants at the time treatment

Goldberg posits that the trial court's answer to the question required only a simple affirmative answer. He also asserts that the answer went beyond the original charge and that the trial judge should have simply reread the applicable portion of its original charge. He further asserts that the supplemental instruction was misleading, confusing and answered questions not asked by the jury. We are unpersuaded.

The trial court was not limited to a single word response to the jury's question. Goldberg has not cited to us any case that stands for the proposition that the answer to a jury question must be limited to a single

was rendered to the plaintiff, each had a duty to inform their patient of all material risks attendant his treatment and all viable alternatives to such treatment and what these material risks and alternatives are.

"Now in this regard, you will remember that the defendant doctors are themselves experts. And whatever they may have said on these points can be taken by you as expert testimony. Once the existence of a duty to so inform has been established, the degree or extent of disclosure necessary to satisfy this duty must be proven with the lay standard.

"You will remember that I told you that under Connecticut law the standard as to how much information is to be given by the doctor to adequately fulfill that duty is viewed from the patient's point of view and how much information the patient will find necessary in order to give informed consent. Here the standard is how an objective reasonable person, facing the situation for the first time, would consider these risks and alternatives. You, members of jury, using the standard of the objective reasonable person in the plaintiff's position are to determine what she was told about material risk and viable alternatives. And whether what she was told was enough for a reasonable person in the plaintiff's position to have given an informed consent to the treatment proposed . . . .

"As to Dr. Goldberg, the information would be as to all material risks and all viable alternatives. Now, should you conclude that the plaintiff was not fully informed by one or both of these defendants in those respects, and thus conclude one or both were negligent in the discharge of their duty to inform, you would have to go on to the additional consideration of causation.

"The plaintiff must show that there is a causal connection between the defendant doctors' failure to adequately inform and her injuries. Now, this element causation, that is, the causal connection, must be established by expert testimony. And the causal connection testified to by the expert must be established to a reasonable medical or dental probability. . . ."

word even when the question admits of such a response, nor has our research led us to any such case. To adopt such a rule would fly in the face of the often repeated language concerning the office of the court's charge to the jury: "The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find established." (Internal quotation marks omitted.) *State* v. *Havican,* 213 Conn. 593, 603, 569 A.2d 1089 (1990); *State* v. *Wolff,* 29 Conn. App. 524, 531, 616 A.2d 1143 (1992). The purpose of a supplemental charge is the same as that of the initial charge and we have recognized that "additional instructions given in immediate response to a request are more informal and expressed with less exactness than are studiously prepared formal charges." (Internal quotation marks omitted.) *State* v. *Cannon,* 185 Conn. 260, 274, 440 A.2d 927 (1981). Thus the claim that the trial court was limited to a one word response in its supplemental charge is without merit.

When examining the substance of the charge and supplemental instruction, "[w]e begin by noting that a jury charge is to be considered from the standpoint of its effect on the jury in guiding them to a correct verdict. . . . A jury charge must be correct in law, adapted to the issues and sufficient for the guidance of the jury. . . . A charge is not to be critically dissected for purposes of discovering possible inaccuracies . . . but rather, the initial charge and any supplemental charge are to be read as a whole. . . . The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted.) *Ellice* v. *INA Ins. Co. of New York,* 208 Conn. 218, 226, 544 A.2d 623 (1988); see also *State* v. *Wolff,* supra; *Sullivan* v. *Norwalk,* 28 Conn. App. 449, 456, 612 A.2d 114

(1992). Individual instructions are not to be judged in isolation from the overall charge. *Coelho* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 123, 544 A.2d 170 (1988); *Sullivan* v. *Norwalk,* supra; see also *State* v. *Wolff,* supra.

Our review of the charge, including the supplemental charge here at issue, convinces us that the charge as a whole properly set forth instructions that adequately and fairly presented the case to the jury under the applicable rules of law. See *Norrie* v. *Heil Co.,* 203 Conn. 594, 602, 525 A.2d 1332 (1987). We further conclude that the charge, including the supplemental charge, when taken as a whole, could not have misled the jury regarding the issues in the case and that the supplemental charge under these circumstances was proper.

The claim of the defendant Goldberg is without merit.

The judgment is reversed as against the defendant Herbert G. Schreiber and the case is remanded with direction to grant Schreiber's motion to set aside the verdict and to render judgment in his favor. The judgment is affirmed as against the defendant Morton H. Goldberg.

In this opinion the other judges concurred.