# JULIO SALAMAN, ADMINISTRATOR (ESTATE OF JAIME C. SALAMAN) *v.* CITY OF WATERBURY ET AL.
## (14709)

O'Connell, Foti and Spear, Js.

Argued November 14, 1996—officially released February 4, 1997

*Jonathan J. Einhorn,* with whom was *Steven D. Ecker,* for the appellant (plaintiff).

*John J. Gorman,* assistant corporation counsel, for the appellee (named defendant).

FOTI, J. The sole issue in this appeal is whether the trial court improperly granted the named defendant's[1] motions to set aside the verdict and for judgment notwithstanding the verdict . The plaintiff argues that, as a matter of law, the trial court improperly rendered judgment notwithstanding the verdict on a ground never presented by the defendant city of Waterbury (city) in its motion for a directed verdict. He claims that under our rules of practice, and as a matter of constitutional law, the trial court was procedurally barred from acting as it did. As an alternative ground for reversal, the plaintiff alleges that the trial court improperly ruled on the issue of notice and usurped the role of the jury with respect to its determinations of reasonableness, dangerousness and causation. We reverse the judgment of the trial court.

The plaintiff's decedent, Jaime Salaman, drowned at the East Mountain Reservoir in Waterbury on Labor Day, September 2, 1991. At that time, he was part of a group from the defendant New Opportunities for Waterbury, Inc. (NOW), a residential counseling program. Following a picnic at a dormitory and some sporting activities at a nearby recreational facility, the group, supervised by the defendant Michael Trotman, a residential supervisor at NOW, traveled by van to the reservoir to swim. The reservoir was not fenced. There was an area on the side of the access road that was used for parking, and a path approximately five or six feet wide that led to the water. The reservoir had not been used as a public water supply for over thirty years.

---

[1] In addition to the named defendant, New Opportunities for Waterbury, Inc., and Michael Trotman, are defendants, but not parties to this appeal.

Fishing was allowed with a permit. In addition, the reservoir is located adjacent to other recreational facilities, and people often used the reservoir site for swimming, camping, hiking, bike riding and beer parties. There were a number of old signs posted on the reservoir property stating: "City of Waterbury, No Trespassing, Public Water Supply." There were, however, no signs in the parking area, on the trail or at the beach area.

The plaintiff brought suit against the city in three counts: nuisance, custodial negligence and premises liability negligence. At trial, after the plaintiff concluded his case, the city moved for a directed verdict on all counts. The court granted its motion on counts one and two, but denied the motion on the negligence claim that was based on premises liability. The sole basis for the city's motion for a directed verdict on the premises liability claim was that the plaintiff's decedent was a trespasser as a matter of law.

In its charge to the jury, the trial court, after describing the position of a trespasser on a landowner's property, concluded: "Therefore, if you find that the plaintiff's decedent Jaime Salaman was a trespasser upon the reservoir property, then you must further find the defendant city of Waterbury owed no duty to [him]. If you find no duty, then you must return a verdict in favor of the defendant city . . . ." The trial court then instructed as to the duty owed a licensee and stated: "In order for the plaintiff to prevail, evidence must show that the circumstances were such that the knowledge of plaintiff's presence could be imputed to the defendant. Such circumstances are sufficient to impute knowledge of presence to the defendant only where they are equivalent of actual knowledge. This equivalent arises where the defendant could have and should have reasonably anticipated the plaintiff's presence on the premises because of the regular pattern of such presence at the

approximate time of day and the place of injury." Thereafter, the court instructed: "It's for you to decide under the facts of this case whether or not it was reasonably foreseeable that a drowning would occur on East Mountain Reservoir. The use of the reservoir would be reasonably foreseeable if said use is reasonable to expect, not merely what might occur." The city took no exception to the court's charge.

The jury returned a verdict in favor of the plaintiff, allocating comparative negligence as follows: the city 28 percent, NOW and Trotman 57 percent, and the plaintiff's decedent 15 percent. Based on total damages of $1,226,264.60, the city's allocation amounted to $343,354.08.

The trial court filed a ten page memorandum of decision in granting the city's motions to set aside the verdict and for judgment notwithstanding the verdict, concluding that the evidence was insufficient to impose liability on the city even if the jury had concluded that the plaintiff's decedent was a licensee.

Our Supreme Court has repeatedly stated that directed verdicts are not favored. *Petyan* v. *Ellis*, 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Puro* v. *Henry*, 188 Conn. 301, 303, 449 A.2d 176 (1982). Nevertheless, the trial court has the power to set aside a jury verdict that, in its opinion, is contrary to either the law or the evidence. *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 206, 579 A.2d 69 (1990). A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555, 562 A.2d 1100 (1989).

Our review of the trial court's action in rendering a judgment notwithstanding the verdict necessitates our considering the evidence in the light most favorable to

the party who was successful at trial. *Bleich* v. *Ortiz*, 196 Conn. 498, 501, 493 A.2d 236 (1985); *Pelletier* v. *Bilbiles*, 154 Conn. 544, 546, 227 A.2d 251 (1967). The verdict should not be set aside and judgment directed if the jury could reasonably and legally have reached its conclusion. *Iseli Co.* v. *Connecticut Light & Power Co.*, 211 Conn. 133, 140, 558 A.2d 966 (1989).

A trial court's decision to set aside a jury verdict can implicate a party's constitutional right to a trial by jury. *Young* v. *Data Switch Corp.*, 231 Conn. 95, 101, 646 A.2d 852 (1994). We must be certain that such a decision did not infringe this right. *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 490, 656 A.2d 1009 (1995). Because a litigant has a constitutional right to have issues of fact determined by a jury; *Seals* v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982); as a preliminary matter, we must closely scrutinize the procedures employed when a trial court sets aside a jury verdict before proceeding to the question of whether that action was proper for reasons of evidentiary insufficiency.

"Pursuant to Practice Book § 321, a party whose motion for a directed verdict has been denied may move to have the jury's verdict set aside and have judgment rendered *in accordance with* his motion for a directed verdict." (Emphasis added.) *Berry* v. *Loiseau*, 223 Conn. 786, 819, 614 A.2d 414 (1992). A motion for judgment notwithstanding the verdict may not be granted on any ground not previously raised by a motion for a directed verdict. Practice Book § 321 provides in relevant part: "Whenever a motion for directed verdict . . . is denied . . . the court is deemed to have submitted the action to the jury subject to a later determination *of the legal questions raised by the motion.* . . . After the acceptance of a verdict . . . a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered *in accordance with his motion for a*

*directed verdict. . . ."* (Emphasis added.) The specific grounds stated in a motion for directed verdict must be renewed in a motion for judgment notwithstanding the verdict. The motion for judgment notwithstanding the verdict is not a new motion, but the renewal of a motion for a directed verdict. 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 203, p. 823.

The purpose of this rule of specificity is to prohibit reconsideration of the factual basis of a jury's verdict unless that verdict is accepted subject to the trial court's reserved ruling on a particular claim of legal sufficiency. This reserved ruling on a specific claim satisfies the constitutional prohibition that would otherwise preclude judicial reexamination of factual matters decided by the jury. Further, as a practical matter, the rule serves to ensure that a party against whom a motion for a directed verdict is directed and the trial court have sufficient notice of the alleged deficiency of proof so as possibly to cure it without necessitating a new trial.

The city concedes that it did not raise the status of licensee in its motion for a directed verdict and that the only basis for its motion on that remaining count of negligence was that the plaintiff's decedent was a trespasser, as a matter of law, to whom the city owed no duty.[2] We must conclude, therefore, that procedurally the trial court improperly granted the city's motion for judgment notwithstanding the verdict.

Our inquiry does not end here, however, because our Supreme Court has indicated that the trial court possesses inherent power[3] to set aside a jury verdict that, in the court's opinion, is against the law or the

---

[2] The following exchange occurred:

"The Court: *You asked me as a matter of law to find that they were trespassers. I'm not going to do that.*

"Defense Counsel: All right. I understand that. *I am asking the court to do that, and that would be—that would be the only basis for any directed verdict on the sixth count."* (Emphasis added.)

[3] Following established procedures is a prerequisite for a just and fair trial. The trial court's power to set aside a verdict, however, is inherent.

evidence. *Palomba* v. *Gray*, 208 Conn. 21, 23–24, 543 A.2d 1331 (1988); *O'Brien* v. *Seyer*, 183 Conn. 199, 208, 439 A.2d 292 (1981). That inherent power to set aside a jury verdict may be exercised without the filing of a motion for a directed verdict. *State* v. *Avcollie*, 178 Conn. 450, 455, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *Belchak* v. *New York, N. H. & H. R. Co.*, 119 Conn. 630, 637, 179 A. 95 (1935). Because setting aside the verdict implicates a party's constitutional right to have factual issues resolved by the jury, we must examine the evidentiary basis of the verdict itself to determine whether the trial court abused its discretion. *Jacobs* v. *Goodspeed*, 180 Conn. 415, 417, 429 A.2d 915 (1980). Further, because the relief granted was not a new trial, but a directed verdict, we do not view the exercise of the court's discretion to extend to the weighing of evidence and the credibility of the witnesses to determine whether the interests of justice require that the relief be granted. See *Palomba* v. *Gray*, supra, 33; *Gaines* v. *Manson*, 194 Conn. 510, 520–21 n.12, 481 A.2d 1084 (1984). Instead, we review the record to determine whether there was any evidence presented on which the jury could have reasonably and legally concluded as it did, and to consider that evidence in the light most favorable to the plaintiff. *Gemme* v. *Goldberg*, 31 Conn. App. 527, 541, 626 A.2d 318 (1993).

Our review of the record discloses that the evidence was sufficient to establish that the city had constructive knowledge of the general public's extensive use of the reservoir for swimming and other related activities. The trial court's instruction was clear that if the jury determined that the plaintiff's decedent was a trespasser, no duty would be owed to him by the city, and a defendant's

The rules of practice merely lay out an appropriate procedure for exercising it. *State* v. *Avcollie*, 178 Conn. 450, 455, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).

verdict had to be returned. As a reviewing court, we must assume the jury followed those instructions. *Mulligan* v. *Rioux*, 229 Conn. 716, 732, 643 A.2d 1226 (1994), on remand, 38 Conn. App. 546, 662 A.2d 153 (1995). The jury, by its verdict, obviously determined that the plaintiff's decedent was not a trespasser. The jury's verdict, therefore, was predicated on a finding that the plaintiff's decedent was a licensee as a member of the general public. The jury was free to find, as it did, on the basis of all the evidence, that the city, with notice of extensive public use of the reservoir, owed a duty to the general public, and to the plaintiff's decedent as a member of the general public, to exercise reasonable care to warn such persons of conditions posing an unreasonable risk of harm. Applying the law as set out by the trial court in its instructions to the jury, we determine that the evidence was sufficient for the jury to find "knowledge of plaintiff's [decedent's] presence . . . imputed to the defendant [city]," and that "[t]he use of the reservoir would be reasonably foreseeable if said use [swimming] is reasonable to expect . . . ."

The basic test of negligence is the reasonable foreseeability of harm of the general nature sustained occurring within the area of the license. *Haffey* v. *Lemieux*, 154 Conn. 185, 188, 244 A.2d 551 (1966). The city's constructive knowledge of the use of its property at the inactive reservoir by the general public on a regular basis for recreational purposes including swimming, as was necessarily found by the jury, is sufficient to impose a duty to use reasonable care "both to refrain from actively subjecting [a licensee] to danger and to warn him of dangerous conditions which [are known by the landowner] but which [it] cannot reasonably assume that the licensee knows of or by reasonable use of his faculties would observe." *Lubenow* v. *Cook*, 137 Conn. 611, 614, 79 A.2d 826 (1951). The jury could reasonably have inferred from the evidence that during warm weather,

the city should reasonably have anticipated that the general public would use the reservoir for swimming. Under the circumstances of this case, the jury reasonably could have concluded, in the application of the measure of duty, that this was the equivalent of actual knowledge of the plaintiff's decedent's presence in the reservoir, that the reservoir and surrounding property was ostensibly held open for the use of the public, and that every member of the public using the land is a licensee.[4]

We conclude that the charge was sufficient to allow the jury properly to determine whether the city had constructive notice of the plaintiff's decedent's presence. Because there was no objection to the charge by the city and because there was evidence from which the jury could conclude that there was constructive notice of the plaintiff's decedent's presence at the reservoir, the verdict should not have been set aside.

The judgment notwithstanding the verdict is set aside and the case is remanded with direction to render judgment for the plaintiff in accordance with the verdict.

In this opinion the other judges concurred.

---

[4] It seems incongruous that our law allows a trespasser, to whom a landowner owes a lesser duty of care, to recover when his presence is only anticipated; *McPheters* v. *Loomis*, 125 Conn. 526, 533, 7 A.2d 437 (1939); *Carlson* v. *Connecticut Co.*, 95 Conn. 724, 730, 112 A. 646 (1921); but does not allow a licensee, as a member of the general public, to enjoy at least the same protection. See *Yeske* v. *Avon Old Farms School*, 1 Conn. App. 195, 470 A.2d 705 (1984) (error to set aside verdict if evidence sufficient for jury to conclude that defendants had reason to know that children were likely to trespass on trail where accident took place).

Our Supreme Court has addressed this seeming incongruity in *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 612 A.2d 1197 (1992). The court acknowledged that there is some overlap in the applicable duty of care owed to trespassers and licensees because of special exceptions to the liability rules generally governing injuries to trespassers. The court held, however, that these exceptions, which cover child trespassers and activities on property that are highly dangerous to constant trespassers, do not establish that the whole system of liability based on entrant status is fatally flawed. Id., 333.