ELIZABETH C. MASOTTI v. BRISTOL SAVINGS BANK

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 453760S
HARTFORD-NEW BRITAIN AT NEW BRITAIN

Memorandum filed April 13, 1994

*Morocco & Associates,* for the plaintiff.
*Reid & Riege,* for the defendant.

BERGER, J. The plaintiff in the present action alleges that on May 7, 1990, the defendant bank wrongfully withdrew $783,165.12 from her bank accounts. The defendant concedes that it withdrew this amount but maintains that the withdrawal was proper because the money was withdrawn from the joint accounts of the

plaintiff and her husband, Vito Masotti, who was in default on an obligation in excess of the amount withdrawn. The plaintiff's complaint contains six counts: conversion, breach of contract, negligence, breach of duty of good faith and fair dealing, and, allegations of an unfair trade practice and a failure to disclose.

The defendant has filed the present motion for summary judgment maintaining that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

Summary judgment "is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wilson* v. *New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989).

To avoid summary judgment, the plaintiff must establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. *Connell* v. *Colwell,* 214 Conn. 242, 251, 571 A.2d 116 (1990).

"Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." *Trotta* v. *Branford,* 26 Conn. App. 407, 412, 601 A.2d 1036 (1992). Mere assertions of fact, whether in a complaint or in a brief, cannot establish the existence of a material fact and cannot refute evidence properly presented by the movant. *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 280–81, 464 A.2d 57 (1983).

In its motion, the defendant provides a lengthy history of the accounts owned by the plaintiff and her husband. On July 5, 1989, account no. 46510318 was opened as a joint savings account in the form of a cer-

tificate of deposit in the sum of $124,873. On May 7, 1990, the defendant withdrew $133,483.34.

On October 21, 1988, account no. 45000204 was opened as a joint savings account, also in the form of a certificate of deposit in the sum of $739,700.95. On April 28, 1989, Vito Masotti withdrew $181,922.58 and the balance was rolled into a new certificate. On May 7, 1990, the defendant withdrew the balance of $640,516.51.

The third account in contention, account no. 4133013, was also opened as a joint savings account on March 3, 1986. Over the next four years, Vito Masotti made several deposits and withdrawals to this account, including deposits of $115,000 and $50,000, and withdrawals of $112,019.21, $20,000, $10,000 and $24,000. On May 7, 1990, the defendant withdrew $3851.

According to the complaint, the plaintiff and the defendant entered into a deposit account contract when each account was opened. The contract indicates that either depositor could withdraw the funds and the defendant had a right of setoff. The plaintiff now argues that the contents of the contract were neither discussed nor did she sign such a contract although she did sign the signature card.

On December 20, 1988, the defendant loaned Vito Masotti's partnership, Village Gate Partnership, $15,000,000 for a project in Farmington. As a partner, Vito Massotti signed a guarantee that stated that the defendant had "a lien and right of set off for all the Borrower's [Village Gate's] Obligations upon and against the deposits, credits and property of each Guarantor now or hereafter in the Lender's possession or control or in transit to the Lender. The Lender may at any time apply the same or any part thereof to any of the Borrower's Obligations without notice and without first resorting to any other collateral."

By letter dated May 4, 1990, the defendant notified Vito Masotti, but not the plaintiff, that the $15,000,000 loan was in default and that there was a hold on his bank accounts. On May 7, 1990, the defendant notified both the plaintiff and her husband that the three aforementioned accounts were closed. While the notification was by certified mail, there is no proof of actual service to the plaintiff. On or about October 23, 1990, as part of a work out, the defendant reinstated the funds it withdrew as Vito Masotti pledged the money to secure new loans from the defendant. The plaintiff learned of the pledge on November 1, 1990, and while Vito Masotti released the defendant, the plaintiff did not.

The defendant argues that there are no genuine issues of material fact and as there is both a contractual and common law right of setoff, summary judgment must be granted. This court agrees. In her complaint, the plaintiff alleges that she entered into the contract and that § 1.10 of the contract specifically authorizes the setoff. Section 1.10 states: "Unless this right is denied to us by law, we can take any funds in your account to pay any debt you owe us that is in default. This is called the right of set-off and applies to all funds of yours in our possession now or in the future. We can use this right of set-off without going through any legal process or court proceedings. If this is a joint account, this right of set-off applies to deposits of any of you to pay the debts owed to us by any or all of you."

The funds in the three accounts were the funds of both Vito Masotti and the plaintiff. In his guarantee agreement, Vito Masotti also agreed to such a setoff and as the Village Gate loan was in default, the defendant could set off those funds. The plaintiff now argues that she never signed or received a copy of the contract yet she pleaded the contract in her complaint. She

also indicated, in response to discovery, that the contract was in the possession of the defendant. In her memorandum of law dated March 7, 1994, the plaintiff stated that "the contract is nothing more than a covenant . . . in which the defendant bank would hold the plaintiff's deposits and pay interest on these deposits until such time as they were withdrawn by the plaintiff." The plaintiff is attempting to assert her rights under the contract but is unwilling to acknowledge the rights of the defendant. She cannot have it both ways.

It should also be noted that under our common law, the defendant has a right of setoff. The coholders of a joint account are considered owners of the entire account and either may withdraw. General Statutes § 36-3; *People's Bank* v. *Atwood,* judicial district of Rockville, Docket No. 9044664S (April 8, 1993) (8 Conn. L. Rptr. 562). As a result of Vito Masotti's guarantee and the default of Village Gate, the defendant had a right of setoff against the accounts. Under Connecticut law, "a creditor-bank has a right of set-off against funds in its possession belonging to a debtor-depositor." *Vic Gerard Golf Cars, Inc.* v. *Citizen's National Bank,* 528 F. Sup. 237, 241 (D. Conn. 1981); see *Blackall* v. *First Stamford National Bank & Trust Co.,* 10 Conn. Sup. 452 (1942).

The plaintiff has also argued in her memorandum of law in opposition to the defendant's motion (as opposed to her initial complaint or affidavit) that the funds were special purpose funds and thus unavailable for setoff under *Vict Gerard Golf Cars, Inc.* v. *Citizen's National Bank,* supra, 528 F. Sup. 241. As noted by the Supreme Court in *Rosa* v. *Colonial Bank,* 207 Conn. 483, 494–95, 542 A.2d 1112 (1988): "A special purpose account [however,] is generally one over which the depositor has only limited dominion and control. The deposit is usually made with special restrictions or limitations agreed

upon between the bank and depositor. . . . Common examples of special purpose accounts include payroll accounts in which the bank agrees to honor only certain checks payable to the depositor's employees . . . and trust or escrow accounts in which the bank has notice of third parties' interests in the account." (Citations omitted; internal quotation marks omitted.)

There are no facts in the present case to show that these accounts were special purpose funds. Accordingly, to the extent that the defendant had the right to set off the funds, and to the extent that there are no facts at issue, judgment enters as a matter of law, as to the first count, conversion, the second count, breach of the depositor's contract, the third count, negligence, the fourth count, alleged violation of good faith and fair dealing and the fifth count, the alleged unfair trade practice.

Count six alleges that the defendant and its officers acted deceitfully in failing "to communicate and negotiate with the plaintiff in a completely open, honest and fair fashion" and by failing "to make a full disclosure to the plaintiff [of] her rights or liability as a joint depositor." Thus, the plaintiff alleges that she was "deceptively induced into making the Depositor's contract . . . ." "The intentional withholding of information for the purpose of inducing action has been regarded, however, as equivalent to a fraudulent misrepresentation." *Pacelli Bros. Transportation, Inc. v. Pacelli,* 189 Conn. 401, 407, 456 A.2d 325 (1983). "To be actionable for fraud, the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." *Egan v. Hudson Nut Products, Inc.,* 142 Conn. 344, 347–48, 114 A.2d 213 (1955).

Notwithstanding the allegations of nondisclosure, the plaintiff has not submitted any proof that would indicate that a material fact exists. A material fact is one that will make a difference in the outcome of the case. *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 578, 573 A.2d 569 (1990). She does not state any facts to support her conclusions other than that the agreement was not explained to her and that she did not sign it. This, however, is not enough to show fraud.

Fraud may not be presumed but must be strictly proven by "clear and satisfactory" evidence or "clear, precise and unequivocal evidence." *Kilduff* v. *Adams, Inc.,* 219 Conn. 314, 328, 593 A.2d 478 (1991); *Alaimo* v. *Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982). The plaintiff has not produced any facts on this issue. An honest mistake does not rise to the level of bad faith. *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240, 249, 618 A.2d 506 (1992).

Indeed, the plaintiff set forth no evidence that she ever deposited any money into these accounts.[1]

In ruling on a motion for summary judgment, the test is whether a party would be entitled to a directed verdict on the same facts; *Nolan* v. *Borkowski,* 206 Conn. 495, 505, 538 A.2d 1031 (1988); and in the present case, without further evidence, the plaintiff cannot prevail. The motion for summary judgment as to the sixth count, therefore, is granted.

---

[1] The court notes that the defendant, in providing a history of these accounts, indicates that Vito Masotti deposited $50,000 into account no. 4133013 and that this was part of a check payable to both him and the plaintiff. All of this sum and more was subsequently withdrawn by Vito Masotti.