## FLEET BANK CONNECTICUT, N.A. *v.* CHARLES CARILLO
### (15494)

Callahan, C. J., and Berdon, Norcott, McDonald and Peters, Js.

344

Argued December 6, 1996—officially released April 15, 1997

*John K. Atticks III*, for the appellant (intervening defendant).

*Paul M. Gaide,* for the appellee (plaintiff Cadle Company).

PETERS, J. The sole issue on this appeal is whether a judgment creditor may enforce a statutory right to a bank execution, pursuant to General Statutes § 52-367b,[1] against the entire balance of a joint bank account to which both a judgment debtor and his nondebtor spouse have contributed funds. The plaintiff, the Cadle Company, as assignee of a money judgment obtained by Fleet Bank Connecticut, N.A. (Fleet),[2] against Charles Carillo, filed a motion for a turnover order seeking to compel the Collinsville Savings Bank (Collinsville) to relinquish the proceeds of a bank account held jointly by Charles Carillo and his wife, Carol. Carol Carillo, after intervening as a defendant,[3] opposed the motion. The trial court granted the motion over her opposition, and she appealed this judgment to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c) and now affirm the judgment of the trial court.

The facts are undisputed. In 1992, Fleet obtained a $58,077.20 money judgment against Charles Carillo. It subsequently assigned that judgment to the plaintiff. Pursuant to § 52-367b, which authorizes execution

---

[1] General Statutes § 52-367b provides in relevant part: "Execution against debts due from banking institution. Natural person as debtor. (a) Exempt debts. Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by sections 52-352a, 52-352b, 52-352c, of the general statutes revised to 1983, 52-354 of the general statutes revised to 1983, 52-361 of the general statutes revised to 1983 and section 52-361a, as well as any other laws or regulations of this state or of the United States which exempt such debts from execution. . . ." The defendant does not seek protection from the exemption statutes or any other state or federal law.

[2] Although Fleet is the named plaintiff, we will refer to the Cadle Company as the plaintiff because it is the assignee of Fleet's rights against Charles Carillo.

[3] Because only Carol Carillo has appealed, we will refer to her as the defendant.

against a bank account held by a natural person, the plaintiff obtained a bank execution against a Collinsville bank account held jointly by Charles Carillo and the defendant. The joint account contained approximately $4500, of which the defendant allegedly contributed 70 percent and Charles Carillo allegedly contributed 30 percent.[4] After the defendant warned Collinsville that she would hold it liable for releasing any of the funds in the account, Collinsville refused to comply with the plaintiff's bank execution. To compel compliance, the plaintiff then filed a motion for a turnover order in the Superior Court. See General Statutes §§ 52-356b and 52-356c.

After successfully moving to intervene, the defendant filed an opposition to the plaintiff's motion. She contended that, because she was not the plaintiff's debtor, her co-ownership of the account shielded its proceeds, or at least those proceeds for which she claimed sole responsibility, from the plaintiff's execution. The trial court rejected this argument. It relied on *Masotti* v. *Bristol Savings Bank*, 43 Conn. Sup. 360, 653 A.2d 836 (1994), aff'd, 232 Conn. 172, 653 A.2d 179 (1995) (per curiam), and the authorities cited therein for the proposition that each coholder of a joint account may be considered an "owner" of the entire account for purposes of a third party creditor's right to execute against that account in satisfaction of one coholder's debt. The trial court concluded that Charles Carillo's ownership rights in the entire account gave the plaintiff, as his creditor, a coextensive right to execute against the account funds in their entirety.

On appeal, the defendant challenges the trial court's conclusion on three principal grounds. First, she contends that the court's reliance on *Masotti* resulted in a

---

[4] In accord with this position, 30 percent of the proceeds of the account have already been released to the plaintiff.

misapplication of the statute governing joint accounts; General Statutes § 36a-290;[5] and conflicted with an earlier opinion construing that statute. See *Grodzicki* v. *Grodzicki*, 154 Conn. 456, 226 A.2d 656 (1967). Next, she analogizes to the law of real property, claiming that a joint account, like a joint estate, devolves into a tenancy in common once one coholder's creditor executes a money judgment against the account. Finally, she contends that, in furtherance of principles of fairness and public policy, the trial court should have undertaken an equitable accounting of the funds in the joint account in order to ensure that only those funds that Charles Carillo himself had contributed were subjected to the plaintiff's bank execution. We find these arguments unpersuasive and, accordingly, affirm the judgment of the trial court.

As the plaintiff's right to execute against the Carillos' bank account is statutory in nature, our analysis neces-

---

[5] General Statutes § 36a-290 currently provides in relevant part: "Joint deposit and share accounts. (a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.

"(b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds. . . ."

In 1994, this section underwent technical modifications. See Public Acts 1994, No. 94-122, § 131.

sarily begins with the text of the bank execution statute. Section 52-367b authorizes a judgment creditor to execute "against any *debts due* from any banking institution to a judgment debtor who is a natural person, except to the extent that such debts are protected from execution . . . ." (Emphasis added.) Protection from execution is derived from certain exemption statutes not relevant here. The critical question in this case, therefore, is one of statutory construction, namely, whether the entire balance of the joint account constitutes a "debt due" from Collinsville to Charles Carillo.[6]

In undertaking this inquiry, we proceed "according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995).

---

[6] A distinction must be made between the banking "debt" owing from Collinsville to Charles Carillo and the judgment "debt" owing from Charles Carillo to the plaintiff. In the typical banking relationship, a depositor is considered the "creditor," while a bank is considered the "debtor." "[A] bank is indebted to its account holders for the amount of the funds that they have deposited." *Frigon* v. *Enfield Savings & Loan Assn.*, 195 Conn. 82, 87, 486 A.2d 630 (1985); *Wawrzynowicz* v. *Wawrzynowicz*, 164 Conn. 200, 202, 319 A.2d 407 (1972); *State* v. *Vars*, 154 Conn. 255, 262, 224 A.2d 744 (1966). Thus, the term "debt," as it is used in the bank execution statute, refers to the amount Collinsville owed Charles Carillo as a result of the joint bank account. To the extent that this money is legally due Charles Carillo, it satisfies the "debt due" requirement of General Statutes § 52-350a (16) and may be executed against in satisfaction of Charles Carillo's judgment "debt" to the plaintiff.

Neither the language of § 52-367b, its legislative history,[7] nor the policy or circumstances surrounding its enactment[8] reveals whether the entire balance of a joint bank account constitutes a "debt due" to one coholder. Contrary to the plaintiff's contention, the definitional section of the postjudgment procedures statutes is similarly uninstructive. See General Statutes § 52-350a. Although § 52-350a (16) defines "property" broadly to encompass "any real or personal property in which the judgment debtor has an interest which he could assign or transfer, including . . . any present or future right or interest, whether or not vested or liquidated [and] any debt, whether due or to become due," it does not specify what constitutes an "interest," "right," or "debt." While it is reasonable to infer from this language the legislature's intent to allow a judgment creditor to execute against all forms of a judgment debtor's assets, it would be unreasonable to infer an intent to encompass property in which a judgment debtor lacks any cognizable interest whatsoever.

Section 36a-290 comes closer to defining the property rights of a coholder in a joint account. That section provides that, when an account is created in the names of two or more people, "such account is deemed a joint account, and *any part or all* of the balance of such account, including *any and all* subsequent deposits or

---

[7] Prior to the enactment of § 52-367b, a judgment creditor's right to execute against a judgment debtor's bank account was governed by what is now General Statutes § 52-367a. See Public Acts 1981, No. 81-352, § 2. The legislative history of § 52-367a, however, is similarly unenlightening on the present issue.

[8] Section 52-367b was enacted out of concerns that its predecessor, § 52-367a; see footnote 7; provided inadequate notice to natural person judgment debtors whose bank accounts were subject to execution. Accordingly, § 52-367b contains notification requirements that § 52-367a does not contain. See, e.g., General Statutes § 52-367b (d) (notice to debtor). Although these concerns illuminate the motivation behind the adoption of this section, they shed no light on whether the scope of the term "debt" was intended to encompass bank accounts held jointly with a nondebtor.

additions made thereto, may be paid to *any* of such persons during the lifetime of all of them . . . ." (Emphasis added.) General Statutes § 36a-290 (a).[9] Thus, under this statute, a bank is authorized to release up to the entire balance of a joint account to each and any coholder who so demands. In our view, this authorization not only provides protection for payor banks but also recognizes a sufficient property interest in each coholder to warrant characterizing all such deposits as a "debt due" to each coholder sufficient to trigger a third party creditor's statutory right to execute against the entire balance of the joint account.

Our recent consideration of § 36a-290 in the context of a third party creditor's setoff rights confirms this view. In *Masotti* v. *Bristol Savings Bank*, 232 Conn. 172, 653 A.2d 179 (1995), we affirmed, per curiam, a trial court opinion holding that coholders of a joint account have sufficient ownership interests in the account so that a creditor of any one coholder may exercise setoff rights against the account in its entirety. See *Masotti* v. *Bristol Savings Bank*, supra, 43 Conn. Sup. 360. In *Masotti*, a husband and his nondebtor wife had established joint bank accounts at Bristol Savings Bank (Bristol). Bristol was also the husband's creditor. When the husband defaulted on his debt, Bristol exercised setoff rights against the entire balance of the joint bank accounts, subtracting from the account funds accordingly. Although Bristol eventually renegotiated with the husband and returned the funds, the nondebtor wife sued Bristol for conversion, claiming that her partial interest in the accounts shielded them from the bank's actions.

---

[9] Prior to 1994, this section contained technically, but not substantively, different language. See Conn. Joint Standing Committee Hearings, Banks, 1994 Sess., p. 107, remarks of Gayle F. Fierer, chief administrative attorney, department of banking.

The trial court in *Masotti* rejected the nondebtor wife's argument and affirmed Bristol's setoff rights. Citing § 36a-290 (then General Statutes § 36-3), the court held that for purposes of a creditor's setoff rights, "[t]he coholders of a joint account are considered *owners* of the entire account and either may withdraw." (Emphasis added.) *Masotti* v. *Bristol Savings Bank*, supra, 43 Conn. Sup. 364. As a result of the husband's property interest in the accounts, the trial court held that Bristol had lawfully exercised its setoff rights against the entire account balances, despite the nondebtor wife's concurrent interest therein. On appeal, we explicitly "adopt[ed] the trial court's well reasoned decision as a statement of the facts and the applicable law on these issues," concluding further that the decision "thoroughly canvassed the applicable legal principles in a manner consistent with the statute governing joint accounts [§ 36a-290] . . . ." *Masotti* v. *Bristol Savings Bank*, supra, 232 Conn. 174–75; see also *United States* v. *First Bank*, 737 F.2d 269, 270 n.2 (2d Cir. 1984) ("[u]nder Connecticut law, [coholders] of a joint account are each considered owners of the entire account, with access to the entire amount therein").

Our affirmance of *Masotti*'s treatment of § 36a-290 controls our resolution of this case.[10] The setoff that

---

[10] The defendant contends that *Masotti* is distinguishable on the ground that Bristol's setoff rights against the joint account derived from contract and common law principles, while in this case, the plaintiff's execution rights derive from statute. We discern no meaningful distinction. With regard to Bristol's alleged contractual rights, the trial court in *Masotti* explicitly acknowledged that the nondebtor wife claimed never to have seen or signed a copy of a contract giving Bristol setoff rights against the joint account. *Masotti* v. *Bristol Savings Bank*, supra, 43 Conn. Sup. 363. More importantly, the trial court's holding in *Masotti* does not depend solely on these contractual rights but also on its determination that the debtor's interest in the joint account was sufficient to expose the account, in its entirety, to Bristol's claim of setoff. Id., 364. We conclude, accordingly, that whatever contractual rights Bristol may have had against the nondebtor wife were, by themselves, nondispositive and, thus, do not undermine the precedential force of *Masotti*.

The fact that Bristol's rights in *Masotti* derive from common law while

was at issue in *Masotti* involved "[t]he equitable right to cancel or offset *mutual debts* or cross demands, commonly used by a bank in reducing a customer's checking or other deposit account in satisfaction of a debt the customer owes the bank." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990) p. 1372; see *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 494, 646 A.2d 1289 (1994). If each coholder of a joint account has a sufficient property interest in the account to permit a *bank* creditor to exercise a right of setoff against a mutual debt that encompasses the entire joint account, it follows that each such coholder has a sufficient property interest to permit a *judgment* creditor to exercise a bank execution, pursuant to § 52-367b, against the entire account. In both cases, a coholder's property interest in the joint account exposes that account, in its entirety, to the creditor's collection powers, in the absence of statutory or common law protections not present here.[11]

The defendant contends that *Masotti* cannot control this case because to deploy its reasoning here would result in a misapplication of § 36a-290. Relying on *Grodzicki* v. *Grodzicki*, supra, 154 Conn. 456, she claims that § 36a-290 "confers no [inter vivos] ownership rights whatever" in the coholders of the account. With respect to funds that a coholder has not himself contributed, she contends that § 36a-290 confers only the right to *withdraw*, and not the right to own, and, therefore, that a creditor cannot attach those funds with respect to

the plaintiff's rights in this case are statutory is equally insignificant. Both sets of rights are simply the vehicles by which a creditor may access bank accounts owned by its debtor.

[11] The defendant conceded that the account neither was exempt from execution under our statutes; see General Statutes § 52-367b (citing to relevant exemption statutes); nor served a special or limited purpose that might otherwise have protected it from a judgment creditor. See *Rosa* v. *Colonial Bank*, 207 Conn. 483, 494–95, 542 A.2d 1112 (1988).

which a debtor has only withdrawal rights.[12] Because *Grodzicki* addressed issues other than the rights of third party creditors, we are unpersuaded of its relevance in the circumstances of this case.

In *Grodzicki*, one coholder withdrew funds from a joint account to which she had been the sole contributor. Her fellow coholder then sued for conversion, claiming an ownership interest in the funds upon their deposit. We rejected this argument, holding that § 36a-290 (then § 36-3) "does not determine the respective rights of the parties inter vivos" such that one coholder may claim community property rights in funds deposited by another.[13] *Grodzicki* v. *Grodzicki*, supra, 154 Conn. 463. *In a conflict between coholders*, therefore, § 36a-290 does not serve to convert the deposits made by one coholder into an inter vivos gift to another coholder.

*Grodzicki* did not address the issue presented in this case and foreshadowed in *Masotti*, namely, whether a judgment debtor has sufficient property rights in joint account funds contributed by another coholder to allow his *creditor* to execute against those funds. Although the defendant correctly observes that one coholder may not invoke § 36a-290 to establish inter vivos ownership

[12] The defendant finds support for this position in *United States* v. *National Bank of Commerce*, 472 U.S. 713, 105 S. Ct. 2919, 86 L. Ed. 2d 565 (1985), in which the Internal Revenue Service sought to execute an administrative levy against a joint account. The court determined that, under Arkansas law, a coholder of a joint account has only withdrawal and not ownership rights in funds he has not himself contributed. Id., 723 and 741 (Powell, J., dissenting). We have not been provided with an analysis of Arkansas state law sufficient to persuade us that we should adopt the reasoning used in *National Bank of Commerce* in construing Connecticut statutes and precedents governing joint accounts.

[13] In so holding, we determined that the two primary objectives of § 36a-290 were: (1) to authorize banks to release any or all funds to each coholder of a joint account upon demand; *Grodzicki* v. *Grodzicki*, supra, 154 Conn. 461; and (2) to establish a presumption of ownership in surviving joint account holders upon the death of a fellow coholder. Id., 463.

rights against another coholder,[14] *Grodzicki* does not hold that a judgment creditor may not invoke § 36a-290 to establish that a coholder has sufficient rights in a joint account to constitute a "debt due" in the amount of its entire balance.

The defendant poses two additional challenges to the trial court's holding. First, she analogizes to the law of real property, contending that a joint account, like a joint tenancy, converts into a tenancy in common once a creditor executes a levy against one coholder's interest. See, e.g., *New Haven Trolley & Bus Employees Credit Union* v. *Hill*, 145 Conn. 332, 335, 142 A.2d 730 (1958). She claims that the creditor's levy then "attach[es] to the interest of the debtor but not the interest" of the nondebtor coholder. We are unpersuaded. As the defendant herself acknowledges, we previously have refused to apply the strictures of real property law to the law of joint accounts; see *McLaughlin* v. *Estate of Cooper*, 128 Conn. 557, 561, 24 A.2d 502 (1942) (joint bank account "does not create a joint estate in the technical sense of the term"); and she has provided no persuasive reason for us to depart from this precedent in this case.[15]

Finally, the defendant contends interstitially, throughout her brief, that principles of policy and

[14] Indeed, we recognized as much in *Masotti*. See *Masotti* v. *Bristol Savings Bank*, supra, 232 Conn. 174 n.1.

[15] In the alternative, the defendant urges us to adopt the rationale of General Statutes § 12-343, which recognizes that, for purposes of succession taxation upon a coholder's death, a joint account may be treated as fractionally divided among coholders. There are two problems with this argument. First, the defendant did not present it in her trial brief and failed to raise it later in a motion for articulation. See Practice Book § 4051. Pursuant to the rules of practice, we are not bound to consider a claim not appropriately raised in the trial court. Practice Book § 4061. Second, and more substantively, the defendant has failed to present any textual or historical evidence to suggest that the terms of a specialized succession tax statute such as § 12-343 should be extrapolated to embody a universally applicable legislative policy in favor of fractional ownership of joint property held inter vivos.

"underlying fairness" militate against exposing to a creditor's bank execution funds that a debtor has not himself contributed. She endorses, instead, a system of judicial accounting, under which a trial court would be required to make an equitable determination of the ownership of joint account funds, so as to shield from a bank execution those funds that the judgment debtor has not contributed. In advancing this proposition, the defendant fails to address the evidentiary and administrative burdens that it would impose upon the trial court.[16] Moreover, the defendant fails to offer any persuasive argument why, having agreed to assume the risk of unlimited withdrawals by the coholder of the joint account if the coholder decides *voluntarily* to honor his debts, she is entitled to shelter from the risk that the coholder of her joint account may be *compelled* to respond to legal process to pay such debts. *Park Enterprises, Inc.* v. *Trach*, 233 Minn. 467, 472, 47 N.W.2d 194 (1951).[17] Because these public policy arguments, to the extent they have any validity, challenge the statutes governing bank executions and joint bank accounts

[16] For example, who would bear the burden of proving the ownership of the funds, the coholder or the third party creditor? Would parol evidence be admissible for such proof? What evidentiary presumptions, if any, would be applicable? If a presumption of partial ownership applies, how much of the funds would a court presume belong to each coholder? What principles should govern intermediate withdrawals and deposits? How would the court dispose of funds for which neither party could account? These and other issues point up the burdensome nature of judicial accounting and underline why "courts should not encourage parties to do their bookkeeping in court when [by establishing a joint bank account] they have virtually declared that they do not wish to be inconvenienced by any strict accountability as between themselves." *Park Enterprises, Inc.* v. *Trach*, 233 Minn. 467, 472, 47 N.W.2d 194 (1951).

[17] It bears emphasis that a debtor who coholds a joint account holds himself or herself out to the rest of the world as the co-owner of the funds in that account. To shield some or all of those funds from execution would penalize creditors who, in making lending decisions, justifiably viewed the funds as an available source of collateral. See General Statutes § 36a-291 (authorizing any coholder of joint account, by delivering a passbook and bank order, to pledge entire account as security for that coholder's loan).

and the effects thereof, they are better directed to the legislature. See *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 253, 449 A.2d 157 (1982).

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and NORCOTT and MCDONALD, Js., concurred.

BERDON, J., dissenting. Contrary to the weight of authority, the majority adopts a rule that will deprive innocent persons of their interests in joint bank accounts by making the entire balance in such accounts available for seizure by creditors of a coholder. For example, if a parent and a child maintain a joint savings account wherein all the deposits made to the account belonged to the parent, and the parent making those deposits never intended to make a present gift to the child but merely maintained the joint account for family convenience, the creditors of the child, as a result of the majority's decision, will have full access to the entire account to satisfy the debts of the child. This rule adopted today by the court not only unjustly favors creditors, but places thousands of joint accounts established for the convenience of the family in jeopardy of being appropriated to pay the debts of a coholder of a joint account who may not have any interest, or less than a whole interest, in the account.

To reach its conclusion, the majority relies upon *Masotti* v. *Bristol Savings Bank*, 43 Conn. Sup. 360, 653 A.2d 836 (1994), aff'd, 232 Conn. 172, 653 A.2d 179 (1995) (per curiam), and General Statutes § 36a-290,[1]

---

[1] General Statutes § 36a-290 provides in relevant part: "(a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is *deemed a joint account, and any part or all of the balance of such account*, including any and all subsequent deposits or additions made thereto, *may be paid to any of such persons during the lifetime of all of them* or to the

both of which, even if generously read, fail to support its position. *Masotti* involved the bank's right of setoff with respect to a joint account maintained at that bank, pursuant to a deposit account contract that *both* depositors signed.[2] In stark contrast, the judgment creditor in the present case, the Cadle Company (an assignee of a money judgment obtained by the plaintiff Fleet Bank Connecticut, N.A.), is seeking to levy an execution on the funds in a joint account held by the defendant, Charles Carillo, the judgment debtor, and his wife, the intervening defendant Carol Carillo, at the Collinsville Savings Bank. Here, unlike in *Masotti*, the nondebtor wife never agreed that the judgment creditor could levy a bank execution on her share of the joint account for the debts of her husband.

survivor or any of the survivors of such persons after the death of one or more of them. *Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.*

"(b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds. . . ." (Emphasis added.)

[2] The deposit account contract that the depositors signed in *Masotti* provided in pertinent part as follows: " 'Unless this right is denied to us by law, we can take any funds in your account to pay any debt you owe us that is in default. This is called the right of set-off and applies to all funds of yours in our possession now or in the future. We can use this right of set-off without going through any legal process or court proceedings. *If this is a joint account, this right of set-off applies to deposits of any of you to pay the debts owed to us by any or all of you.*' " (Emphasis added.) *Masotti* v. *Bristol Savings Bank*, supra, 43 Conn. Sup. 363.

Although the majority is correct in pointing out that the trial court in *Masotti* acknowledged the nondebtor spouse's claim that she never signed nor received a copy of the deposit contract, the trial court rejected this argument by stating that "[t]he plaintiff is attempting to assert her rights under the contract but is unwilling to acknowledge the rights of the defendant. She cannot have it both ways." Id., 363–64. Unfortunately, the majority ignores this part of the trial court's opinion.

In *Masotti*, besides the bank's contractual right of setoff, the trial court also referred to General Statutes § 36-3 (now § 36a-290),[3] which provides in essence that the funds of one joint depositor are to be considered the funds of the other for purposes of *withdrawal*. *Masotti* v. *Bristol Savings Bank*, supra, 43 Conn. Sup. 364. In the present case, however, § 36a-290 does not support the third party judgment creditor's position.

In *Grodzicki* v. *Grodzicki*, 154 Conn. 456, 461, 226 A.2d 656 (1967), almost thirty years ago, this court placed the following gloss on § 36a-290 (then § 36-3): "From the language of the statute, which makes no attempt to define the interest of either party in the account, it is obvious that its purpose was to protect the interests of the banks [at which the accounts are maintained]. A number of states have such statutes, which are referred to as 'bank protection statutes.' " In *Grodzicki*, the construction placed on subsection (a) of § 36a-290 (then the first sentence of § 36-3 [1]) is that it "permits the payment by the bank to any of the codepositors during the lifetime of all of them or to the survivor or survivors after the death of one or more of them 'and the receipt or acquittance of the person or persons to whom such payment is made shall be a valid and sufficient release and discharge for all payments so made.' This portion of the statute is obviously for the protection of the banks. The language of the statute does not determine the respective rights of the parties inter vivos." Id., 462–63. With respect to subsection (b) of § 36a-290 (then the second sentence of § 36-3 [1]), the court held that "[t]he obvious intent of the legislature is to give to the survivor or survivors an irrebuttable presumption of ownership. . . . The presumption created by [subsection (b)] of the statute has no application to an action between the parties when all of them are alive. In such a case, we must look to our common

---

[3] In 1995, § 36-3 was transferred to § 36a-290.

law for a determination of the question presented."
(Citations omitted; internal quotation marks omitted.)
Id.[4] In sum, *Grodzicki* held that the statute did not
determine the respective interests of the coholders of
a joint account.

We have long held that there is a presumption "that
the legislature is aware of our interpretation of a statute,
and that its subsequent nonaction may be understood
as a validation of that interpretation." *Ralston Purina
Co.* v. *Board of Tax Review*, 203 Conn. 425, 439, 525
A.2d 91 (1987). Indeed, in the thirty years since the court
decided *Grodzicki*, the legislature has visited § 36a-290
and its predecessor six times, and never took any action
to reverse the interpretation placed on it by this court.
The majority, however, does that today by making the
absurd distinction that *Grodzicki* applies to the inter-
ests between coholders, but not to the interests between
the innocent coholder and the judgment creditor of the
debtor coholder.

Several other jurisdictions, with similar statutes, have
also come to the conclusion that legislation such as
§ 36a-290 is intended solely to protect banks that hold
deposits in joint accounts. See, e.g., *Black* v. *Black*, 199
Ark. 609, 617, 135 S.W.2d 837 (1940) (statute giving
codepositors equal rights to withdrawal of funds in joint
bank deposit was "passed for the protection of the bank
in which the deposit was made. It permits the bank to
pay out the deposit . . . and protects the bank in doing
so . . . . The statute effects no investiture of title as

---

[1] In *Grodzicki*, the court noted that "[s]pecial statutes have been enacted
in six states. . . . [T]hey specifically recognize the joint account as a method
of transfer of funds to the surviving co-depositor. None of these statutes,
however, makes any mention of the co-depositors' inter vivos interests.
Thus, although the survivorship question is settled in these jurisdictions,
the question of the donee's inter vivos interests is not answered, and the
courts must once again look to their common law." (Internal quotation
marks omitted.) *Grodzicki* v. *Grodzicki*, supra, 154 Conn. 462.

between the depositors themselves, but only relieves the bank of the responsibility and duty of making inquiry as to the respective interests of the depositors in the deposit . . . ." [Internal quotation marks omitted.]);[5] *Beacon Milling Co.* v. *Larose,* 138 Vt. 457, 460, 418 A.2d 32 (1980) ("provisions of [the] statute are for the protection of the bank paying money to persons named in deposits made in the manner specified in the statute, and do not change or affect the title to such deposit" [internal quotation marks omitted]); *Yakima Adjustment Service, Inc.* v. *Durand,* 28 Wash. App. 180, 184, 622 P.2d 408 (1981) ("[t]here is no doubt that the original and still a primary purpose behind statutes of this nature is to protect the depository institution by insulating it from disputes with depositors").

"Jurisdictions applying the general rule that joint bank accounts are vulnerable to seizure by the creditor of one depositor usually hold that the creditor's rights are limited to the amount of the funds in the account equitably owned by the debtor depositor and do not extend to funds equitably owned by the innocent depositor." Annot., Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One

---

[5] In *United States* v. *National Bank of Commerce,* 472 U.S. 713, 105 S. Ct. 2919, 86 L. Ed. 2d 565 (1985), Justice Powell, in his dissent, gleaned this distinction from Arkansas law and stated that "[t]his right [to withdraw from the joint accounts] unquestionably belonged to [the delinquent taxpayer], as it did to each of the other codepositors. They all had the same right to withdraw. But the right to withdraw funds was no more than that. It was a right accorded parties to joint accounts as a matter of mutual convenience and it was independent of any right *to* or *in* the property. It encompassed no right of possession, use, or ownership over the funds when withdrawn." (Emphasis in original.) Id., 741, citing *Black* v. *Black,* supra, 199 Ark. 617, and *Hayse* v. *Hayse,* 4 Ark. App. 160-B, 160-F, 630 S.W.2d 48 (1982). Indeed, even the majority opinion in *National Bank of Commerce* recognized this distinction in Arkansas state law regarding creditors' rights, although it was not dispositive of the issue because the case concerned a federal tax-collection matter and, as such, was governed by federal statute. *United States* v. *National Bank of Commerce,* supra, 723 and 726–27.

of the Joint Depositors, 11 A.L.R. 3d 1473 (1967). Indeed, the clear weight of authority counsels that an innocent coholder's interest in the account should not be subjected to a coholder's debts. See, e.g., *Hayden* v. *Gardner*, 238 Ark. 351, 353–54, 381 S.W.2d 752 (1964) (delineating three different methods of garnishment of joint accounts and adopting view "that the joint account should be garnishable only in proportion to the debtor's ownership of the funds, as to which parol evidence is admissible to show the respective contributions of each depositor" and remanding case with direction that innocent codepositor be made party [internal quotation marks omitted]); *Maloy* v. *Stuttgart Memorial Hospital,* 316 Ark. 447, 450, 872 S.W.2d 401 (1994) (confirming rule in *Hayden* and characterizing it as majority rule); see also *Amarlite Architectural Products, Inc.* v. *Copeland Glass Co.,* 601 So. 2d 414, 416 (Ala. 1992) (in jurisdiction with joint bank account statute similar to Connecticut's, court concluded "that joint accounts are garnishable to the extent of the ownership of the debtor. . . . Furthermore, we agree with the holding in *Hayden* . . . that there is a rebuttable presumption that the funds in the joint account belong to the debtor. The burden is on the depositors to prove otherwise. . . . We consider this to be the most equitable solution, because it is much easier for the depositors than the creditor to have or obtain proof of the ownership of the commingled funds." [Citations omitted.]); *Traders Travel International, Inc.* v. *Howser,* 69 Haw. 609, 615–16, 753 P.2d 244 (1988) (even with joint bank account statute, stating that "[m]ost courts agree that judgment creditors can garnish the joint bank account of a debtor [although other account holders exist] but have split over the degree of vulnerability. The majority of jurisdictions rule that joint accounts may be garnished only to the extent of the debtor's equitable interest. . . . We now adopt the majority view that the debtor presump-

tively holds the entire joint bank account but may disprove this supposition to establish his or her equitable interest. In this way, the debtor, at an evidentiary hearing, may prevent the judgment creditor from seizing more than the debtor's fair share of the account." [Citations omitted.]); *Miller* v. *Clayco State Bank*, 10 Kan. App. 2d 659, 664, 708 P.2d 997 (1985) ("[c]learly, in the garnishment of a joint bank account, only the interest actually owned by the garnishment debtor is subject to seizure"); *Delta Fertilizer, Inc.* v. *Weaver*, 547 So. 2d 800, 802 (Miss. 1989) (adopting Arkansas Supreme Court's rule in *Hayden* as law of Mississippi and also stating that "[i]n the majority of jurisdictions, the entire [joint] account is vulnerable, but evidence is permitted to show the respective ownership of each depositor"); *Baker* v. *Baker*, 710 P.2d 129, 132–34 (Okla. App. 1985) ("[M]ost courts agree that a joint tenancy bank account is garnishable by the creditor for a debt incurred only by one of the joint depositors. . . . Allowing the creditor to reach the joint account only to the extent of the debtor's interest protects innocent parties."); *RepublicBank Dallas* v. *National Bank*, 705 S.W.2d 310, 311 (Tex. App. 1986) ("In most jurisdictions, joint bank accounts are vulnerable to seizure by the creditor of any of the depositors, but the creditor's right to seize the funds is limited to the funds in the account that are equitably owned by the debtor and does not extend to funds equitably owned by other parties. . . . Texas appears to follow this general rule. . . . Even when garnishment is proper . . . assets owned by two or more persons can be reached by garnishment only to the extent of the judgment debtor's ownership interest in the jointly owned asset." [Citations omitted.]); *Yakima Adjustment Service, Inc.* v. *Durand*, supra, 28 Wash. App. 184 ("[T]he garnishment of a joint bank account reaches only those funds owned by the debtor. The burden of proving the ownership of the funds rests with the joint depositors. This holding coincides with the majority rule.").

The majority, in its zealousness to protect the interests of creditors, points out that creditors may be misled because the account names the debtor as a joint owner. Of course, the simple answer is that creditors know how to protect themselves before extending credit—that is, by having all of the joint owners pledge their interest. The majority also cites to General Statutes § 36a-291 for the proposition that it authorizes a holder of a joint account to pledge the entire account as security for a loan. Section 36a-291, however, requires delivery of the passbook to the pledgee before the bank is required to transfer such pledged account. There was no such pledge of the joint account in this case.

The majority fails to recognize that joint bank accounts are usually maintained for the convenience of persons of little means or for the benefit of family members. Unlike the financial options available in the world of commerce or among the financially affluent, the joint account may be the only practical option these persons have for handling their finances. It troubles me that the court, in adopting a bright line rule, is motivated by concerns about evidentiary and administrative burdens on the trial courts that would occur if litigants were allowed to resort to the courts for a determination of the respective ownership interests of the coholders of a joint account.[6] The courts of this state, however,

---

[6] The majority, in considering the administrative and evidentiary burdens on the trial courts, lists several issues that the trial courts would have to resolve. See footnote 16 of the majority opinion. Those issues should not preclude an innocent coholder from receiving the benefit of an evidentiary hearing. Like other jurisdictions, we should adopt the rebuttable presumption that the funds belong to the debtor coholder. The innocent coholder, or the debtor, would then bear the burden of proving the respective equitable interests in the joint account. See *Traders Travel International, Inc.* v. *Howser,* supra, 69 Haw. 615–16 (adopting majority view that debtor presumptively owns entire joint account but may, at evidentiary hearing, disprove presumption and establish his or her ownership interest in joint account); *Yakima Adjustment Service, Inc.* v. *Durand,* supra, 28 Wash. App. 184 (burden of proving respective interests in funds rests with joint depositors). Any interest not proven to be owned by the innocent coholder would, under

exist not only to litigate the complexities of the Uniform Commercial Code for the banking and the commercial world, but also for the less affluent consumer.

I would reverse the trial court's judgment and remand the case for a new hearing to determine the equitable interest of Carol Carillo, which interest should be exempt from execution for the judgment debt of Charles Carillo. In accordance with the majority of other jurisdictions, we should hold that there is a rebuttable presumption that the funds in the joint account belong to the debtor coholder, and that the burden is on the coholders to prove otherwise. Therefore, Carol Carillo was entitled to a hearing in order for the court to determine her interest in the account.[7]

Accordingly, I dissent.[8]

---

the presumption, be subject to seizure by the creditors of the debtor coholder.

[7] See footnote 6 of this dissent.

[8] I have one final concern with respect to the majority's decision. The innocent coholder in this case, Carol Carillo, also advances the argument that the public policy of this state, as reflected in our tax succession statute, General Statutes § 12-343, supports her position that at least some fractional portion of the joint account should be recognized as hers and thereby exempt from execution by the creditors of her husband, the debtor coholder. She cogently cites to § 12-343, which provides that "*[w]henever property is held in the joint names of two or more persons* and the survivor or survivors of them, the right of the survivor or survivors to the immediate ownership or possession and enjoyment of such property shall be a taxable transfer and *the tax shall be computed as though a fractional part of the property, determined by dividing the fair market value of the entire property by the number of persons in whose joint names it was held,* belonged absolutely to the deceased person and had been bequeathed or devised by him to the survivor or survivors by will . . . ." (Emphasis added.) In other words, under § 12-343, ownership in a joint account shall be pro rated among the coholders (the survivors and the decedent) for tax computation purposes, in contrast to the conclusive presumption adopted by the majority today with respect to the lifetime interests of coholders, a holding that advances only the interests of the creditors.

Nevertheless, the majority, as it states in footnote 15 of its opinion, will not consider § 12-343 in determining what should be the law of this state, because it was not raised by Carol Carillo before the trial court, and because she has not presented any "textual or historical evidence" to support her

argument before this court. This is simply incredible and is contrary to our recent case law. In *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 628 A.2d 946 (1993), I pointed out and endorsed the procedure employed by the majority where "[w]e, *on our own,* raised the applicability of [a statute] and [therefore] decided [the] case on the basis of a claim that was never raised in the trial court and was raised in this court only as a result of our direction." (Emphasis in original.) Id., 496 (*Berdon, J.,* dissenting and concurring). Furthermore, the logic that we should not consider all relevant law when deciding a case that will determine what our law should be for all other similar cases, eludes me.