[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by plaintiffs Charles Ferrato and Hartford Fire Insurance Company against defendant Webster Bank. The parties have filed a stipulation of facts and the court is requested to render its decision based on those facts. The stipulation is set forth as follows:
"On June 25, 1997 Hartford Fire Insurance Company, a plaintiff in this matter, obtained a judgment by stipulation against Par Painting, Inc., a Connecticut corporation, in the sum of $59,308.60. A copy of the stipulation and the court's notice of judgment is attached as Exhibit 1. On December 5, 1997 the court issued a bank execution against Par Painting, Inc., in the total amount of the judgment, no portion of it having been paid to that time. A copy of the execution is attached as Exhibit 2.
"Prior to noon on January 15, 1998 the named plaintiff, Hartford County Deputy Sheriff Charles Ferrato, served that execution on a branch office of Eagle Federal Saving Bank (hereinafter "Eagle Bank"), predecessor in interest to Defendant, Webster Bank, located at 108 Farmington Avenue, Hartford. Together with post judgment interest and statutory fees allowed the serving officer, the amount demanded in the execution was $68,885.42. Eagle Bank had an account owned by the judgment debtor, Par Painting, Inc. The balance in the account at the bank's closing time on the day the execution was served was $119,694.87. On January 21, 1998 Eagle Bank issued and mailed to Sheriff Ferrato its teller's check number 20-114328297 in the amount of $68,885.42, in full payment of the execution. On January 22, 1998 Eagle Bank stopped payment on that teller's check and so informed Sheriff Ferrato. The sheriff later deposited the check into his trustee account, whereupon it was dishonored as a stopped-payment item and returned to him. A copy of the check is attached as Exhibit 3.
"Robert Thavenius, president of another Eagle Bank customer, Rotha CT Page 6796 Contracting Company, Inc. (hereinafter "Rotha Contracting"), was also an authorized signer of checks drawn on the Par Painting, Inc. account. On January 13, 1998 Thavenius requested that the proceeds of a certain Certificate of Deposit owned by Rotha Contracting be deposited into the Rotha Contracting checking account. An employee of Eagle Bank mistakenly caused those proceeds, in the amount of $109,792.99, to be deposited into the Par Painting, Inc. account. Of the funds in the Par Painting account at the time the execution was served, only $9,901.88 represented funds of the judgment debtor, Par Painting, Inc.; the deposit of $109,792.99 rightfully belonged to and was the sole property of Rotha Contracting. On January 21, 1998, after the bank had mailed its check to Sheriff Ferrato, Eagle Bank realized its error and debited the account of Par Painting, Inc. in the amount of $109,792.99 (the amount of the Rotha Contracting Certificate of Deposit).
"On January 22, 1998, Eagle Bank issued a stop payment order on its teller's check to Plaintiffs. The $109,792.99 was then credited to the Rotha Contracting checking account. Eagle Bank did not issue to Sheriff Ferrato a check in the amount of $9,901.88 (the balance in the account less the erroneous deposit). To date, no portion of Hartford Fire Insurance Company's judgment has been satisfied."
Plaintiff Charles Ferrato ("Ferrato") is a Hartford County deputy sheriff. Plaintiff Hartford Fire Insurance Company is a corporation holding an unsatisfied judgment against Par Painting, Inc. obtained in a prior suit in the amount of $59,308.60. In December 1997 The Hartford obtained a bank execution from the court and turned it over to Ferrato to be served on any banking institution at which Par Printing had an account. Such an account was located at Eagle Federal Savings Bank ("Eagle") and the execution was served. The interest of Ferrato in this matter is to the extent of his statutory fee, i.e. 10% of the amount that should have been paid over to him by Eagle. The interest of The Hartford is the remaining ninety percent of that amount, payable to it in satisfaction of its judgment against Par Printing. Subsequent to the events giving rise to this action Eagle Bank merged into Webster Bank, the defendant in this matter.
The significant dates are as follows: On January 13, 1998 the proceeds of a certificate of deposit in the amount of $109,792.99 were deposited to the account of Par Printing instead of the account of Rotha Contracting. This was done through the bank's error. Prior to noon on January 15, 1998 Ferrato served the court execution at the Eagle Bank. On January 21, 1998 Eagle Bank issued its check in payment of the execution. On January 22, 1998 Eagle Bank stopped payment on its check.
Inasmuch as the execution was served on the bank on January 15, 1998, CT Page 6797 it is the plaintiff's position that the bank had only until midnight on January 16, 1998 in which to take action to avoid complying with the execution. Since the bank stopped payment on January 22, 1998, plaintiffs claim that the bank had no right to stop payment on the check. The court agrees.
The issue raised is whether or not Connecticut law permits a banking institution to refuse to honor a bank execution retroactively after its midnight deadline has passed in order to rectify a banking error, at the expense of a judgment creditor.
General Statutes § 52-367a provides in pertinent part as follows: "Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor which is not a natural person . . . If any such banking institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, it shall pay . . . the amount of such indebtedness not exceeding the amount due on such execution . . . Such banking institution shall act upon such execution according to Section 42a-4-303 before its midnight deadline as defined in Section 42a-4-104. If such banking institution fails or refuses to pay over to such officer the amount of such debt . . . such banking institution shall be liable in an action therefor to the judgment creditor named in such execution . . ."
The applicable midnight deadline as defined in Section 42a-4-104
is as follows:
 "DEFINITIONS AND INDEX OF DEFINITIONS. (a) In this article, unless the context otherwise requires. . . . (10) `midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice from which the time for taking action commences to run, whichever is later. . . ."
Since the bank received the execution on January 15, 1998, its midnight deadline was midnight on January 16th. Yet it mailed its teller's check to Sheriff Ferrato on January 21st and stopped payment on January 22nd
long after its midnight deadline.
Our Supreme Court in Normand Josef Enterprises, Inc. v. ConnecticutBank, 230 Conn. 486 (1994) has "determined that the midnight deadline, as defined in § 42a-4-104 (a) (10) is the applicable time limitation within which a bank must act upon a § 52-367a execution." Thus, it held in that case that the bank was required to exercise its competing right to a setoff before the expiration of that deadline. (Page 503). CT Page 6798
The defendant claims that it was justified in stopping payment on the check after its midnight deadline because Eagle Bank was not indebted to Par Printing, Inc., the judgment debtor for the amount of the execution. It claims that the bank is not indebted to a depositor for sums the bank erroneously deposits into that person's account, and it cites Fleet BankConnecticut, N.A. v. Carillo, 240 Conn. 343 (1997). The defendant's reliance on Fleet Bank for this proposition, however, is misplaced, because the facts in Fleet differ significantly from those in the present case. In Fleet there was no claim that the funds in a joint bank account belonged to any depositor other than the persons named on the account. In the present case, however, the bank erroneously deposited the funds into the wrong account. The Fleet case does not hold that Connecticut law permits a banking institution to refuse to honor a bank execution retroactively after its midnight deadline has passed in order to rectify its own error at the expense of a judgment creditor.
The court finds that the principle of the Midnight Deadline enunciates a public policy that balances the rights of all involved by imposing both a deadline and an obligation to take, before that deadline passes, an objectively confirmable action clearly identifiable as vindicating the right involved. Once that deadline has passed without such action being taken, public policy decrees that the banking institution bear the loss, if any. As stated in Normand it is the policy "of all states that have adopted the Uniform Commercial Code, which requires that internal bankinqtransactions involving adverse interests be evidenced by bookkeepingentries or some similarly binding overt act. This policy not only provides criteria for determining conflicting claims, but also assures those who deal with banks that their rights will not be defeated by unsupported internal declarations of a self-serving nature." (Emphasis added) Normand at page 505. Also See Sarasota, Inc. d/b/a Credit ControlManagement v. Ralion Corporation, et al, 21 Conn.L.Rptr. No. 4. 137.
Clearly it is the policy of § 52-367a that the general public has the right to rely on banking transactions as evidenced by a bank's own records; and clearly the plaintiffs had every right to rely on the defendant's records in regard to the Par Printing account as it stood immediately after the midnight deadline had passed. To allow a bank to refuse to honor an execution at any time after its midnight deadline merely because it has made an error, defeats the rights of any interested person who relies on those bank records. Such an allowance violates the policy as stated in § 52-367a.
While the bank maintains that the $109,792.99 in the Par Printing, Inc. account did not belong to Par Printing, Inc., but rather to another bank customer, the fact remains that the Par Printing bank account contained CT Page 6799 those funds (plus an additional $9,901.88 which did belong to Par Printing). Thus, the plaintiffs relied on the bank records which indicated to the world that the bank owed those sums to Par Printing, Inc., the judgment debtor. The policy simply stated is that the Midnight Deadline is necessary to give specific certainty to banking transactions in general.
It is also the policy of this state, confirmed by the court in FleetBank, N.A. v. Charles Cardillo, supra that the courts are to be spared the evidentiary and administrative burdens associated with "judicial accounting" and why "courts should not encourage parties to do their bookkeeping in court." (Page 355). While the source of the funds in this case was a CD belonging to Rotha and the funds were Rotha's property, this might not prove to be the situation in another case where a bank commits a similar error. There easily could be cases where it would not be clear as to which depositor owned some or all of the funds in question. Thus, if a bank were allowed to stop payment on its tellers checks at any time after its midnight deadline and to transfer the funds from one depositor to another to the detriment of a judgment creditor, the judgment creditor would likely feel compelled to bring an action in court to determine the rightful ownership of the funds. Such an error by the bank would clearly encourage parties to "do their bookkeeping in court" in violation of the policy set forth in Fleet.
In summary, the court finds that the defendant bank deposited the funds of Rotha into the wrong account through its own negligence and stopped payment on its Teller's check after its midnight deadline, all to the detriment of the plaintiffs who acted in reliance on the bank's records. Clearly, the bank held itself out to all who might have an interest that it was Par Printing's debtor when it deposited the funds into Par Printing's account. The midnight deadline is an absolute, as is necessary to give certainty to bank transactions, and the innocent plaintiffs should not be required to bear the loss caused by the bank's negligence.
Accordingly, judgment may enter for the plaintiffs as follows:
 Amount of check on which payment was stopped $68,885.42
 Interest from 1/19/98 to 12/29/98 under § 37-3a (10% x 344 days) $ 6,492.21
 12% Interest re: Offer of Judgment dated 12/30/98 through 3/31/00 $10,372.45
 12% Interest re: Offer of Judgment CT Page 6800 dated 4/1/00 through 5/31/00 (61 days) $ 1,381.48 ---------- $87,131.56
 Allen, J. Judge Trial Referee